88 Cal.App.3d 899 (1979)
CHRISTINE M. FULTS, Petitioner,
v.
THE SUPERIOR COURT OF SONOMA COUNTY, Respondent; DAVID A. COOK, Real Party in Interest.
Docket No. 43694.
Court of Appeals of California, First District, Division Three.
January 29, 1979.
*901 COUNSEL
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Thomas A. Brady, Gloria F. DeHart and Jamie Jacobs-May, Deputy Attorneys General, for Petitioner.
No appearance for Respondent.
John Maderious and Michael E. Perenon for Real Party in Interest.
OPINION
HALVONIK, J.
Stephanie Nicole Fults was born to petitioner Christine Fults on October 3, 1975. The birth certificate lists the mother's age as 17 and names David Cook, real party in interest, as the father, age 19. Petitioner and Cook have never been married nor have they ever lived together.
The District Attorney of Sonoma County filed a paternity suit on petitioner's behalf naming Cook as defendant.[1] Cook's answer denied paternity and he propounded a number of interrogatories, two of which, numbers 76 and 77, are the subject of the instant petition. Number 76 asks, "Have you ever had sexual intercourse with anyone with whom you were not married? If so, state the name and address of such person and the date of such intercourse."
*902 Number 77 demands that petitioner "State the names and addresses, if known, [of] all persons with whom you have been romantically or sexually involved and the dates of such involvements."
Petitioner objected to these interrogatories as irrelevant, embarrassing and an invasion of her privacy. In reply to another interrogatory she had stated: "I had no sexual relations with anyone other than the defendant from September 1, 1974 through March 1, 1975." That answer covered a period three months before and three months after the likely date of conception and that, she insisted, was sufficient to satisfy any legitimate curiosity. The trial court disagreed and ordered petitioner to answer but, concerned with the sweep of the interrogatories, limited their scope to the period of one year prior to the likely date of conception and one year after that date. It is that order which is challenged here.
Directing our attention to Peterson v. Peterson (1953) 121 Cal. App.2d 1, 6 [262 P.2d 613] and Dastagir v. Dastagir (1952) 109 Cal. App.2d 809, 815-816 [241 P.2d 656] and their holding that evidence of the identity of sexual partners prior to the probable date of conception is inadmissible, petitioner contends that the challenged interrogatories seek irrelevant information. But relevancy at trial and relevancy for purposes of discovery are two different things. (1) "An appellate court cannot reverse a trial court's grant of discovery under a `relevancy' attack unless it concludes that the answers sought by a given line of questioning cannot as a reasonable possibility lead to the discovery of admissible evidence or be helpful in preparation for trial." (Pacific Tel. & Tel. Co. v. Superior Court (1970) 2 Cal.3d 161, 173 [84 Cal. Rptr. 718, 465 P.2d 854]; Code Civ. Proc., §§ 2016, subd. (b), 2031.) (2) If petitioner's statement that she had sexual relations with no one but Cook three months before and after the time of conception is accurate then of course answers to defendant's interrogatories will provide no relevant evidence or any leads to relevant evidence. But parties to litigation are customarily skeptical about the averments of their adversaries and courts must suspend judgment on such matters until all of the evidence is in. If her statement is inaccurate then answers to the challenged interrogatories may furnish defendant with the means to establish that fact.
Our conclusion that petitioner's relevancy objection is meritless does not end the matter. She also objects that requiring her to answer questions about the most intimate aspects of her life invades the right of *903 privacy secured to her by article I, section 1 of the California Constitution.
Although it has been barely six years since the people elected to place privacy among the inalienable rights expressly guaranteed in the Declaration of Rights, traditional principles of constitutional law inform its application. Before 1972, privacy had been identified as a fundamental liberty implicitly guaranteed by the federal Constitution. (See Griswold v. Connecticut (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]; Parrish v. Civil Service Commission (1967) 66 Cal.2d 260 [57 Cal. Rptr. 623, 425 P.2d 223].) (3) As a fundamental liberty, it is protected even from incidental encroachment absent the demonstration of some compelling interest that is both legitimate and overriding. (Griswold v. Connecticut, supra, 381 U.S. 479; Sherbert v. Verner (1963) 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790]; White v. Davis (1975) 13 Cal.3d 757 [120 Cal. Rptr. 94, 533 P.2d 222]; Huntley v. Public Util. Comm. (1968) 69 Cal.2d 67 [69 Cal. Rptr. 605, 442 P.2d 685]; Parrish v. Civil Service Commission, supra, 66 Cal.2d 260.)
The right of privacy may be invoked by a litigant as justification for refusal to answer questions which unreasonably intrude on that right. (Britt v. Superior Court (1978) 20 Cal.3d 844 [143 Cal. Rptr. 695, 574 P.2d 766]; Valley Bank of Nevada v. Superior Court (1975) 15 Cal.3d 652 [125 Cal. Rptr. 553, 542 P.2d 977]).[2]
The right of privacy does not come into play simply because the litigant would rather not reveal something. But just as the interrogatories in Britt v. Superior Court, supra, dealt with the recognized right of associational privacy (N.A.A.C.P. v. Alabama (1958) 357 U.S. 449 [2 L.Ed.2d 1488, 78 S.Ct. 1163]) and the interrogatories in Valley Bank of Nevada v. Superior Court, supra, 15 Cal.3d 652, dealt with the recognized expectation of privacy in personal financial affairs (see City of Carmel-by-the-Sea *904 v. Young (1970) 2 Cal.3d 259 [85 Cal. Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313]) these interrogatories deal with a well established "zone of privacy," one's sexual relations. (Eisenstadt v. Baird (1972) 405 U.S. 438 [31 L.Ed.2d 349, 92 S.Ct. 1029]; Griswold v. Connecticut, supra, 381 U.S. 479; Baird v. Lynch (W.D.Wis. 1974) 390 F. Supp. 740, 752; Mindel v. United States Civil Service Commission (N.D.Ca. 1970) 312 F. Supp. 485, 488.)
(4a) Answers to questions about petitioner's sexual relations, therefore, may not be required absent a compelling state interest that is promoted by requiring her response. There is just such an interest here, "the historically important state interest of facilitating the ascertainment of truth in connection with legal proceedings." (In re Lifschutz (1970) 2 Cal.3d 415, 432 [85 Cal. Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].) Where paternity is the issue, petitioner cannot refuse to answer all questions about her sexual activity on the plea that it is a private matter. But she has not done so. She has answered the question about her sexual relations during the period of conception and the period surrounding that time. That question, unlike the challenged interrogatories, could not help, in the nature of things, from eliciting a productive answer. The very gravamen of petitioner's suit provided foundation for the inquiry. But questions about petitioner's sexual life during periods totally removed from the possible period of conception cannot stand on their own. Their scope is not tailored to fit their purpose. (Canon v. Justice Court (1964) 61 Cal.2d 446, 459 [39 Cal. Rptr. 228, 393 P.2d 428].) (5) When compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information. (Shelton v. Tucker (1960) 364 U.S. 479, 483, 485 [5 L.Ed.2d 231, 234-236, 81 S.Ct. 247].) "`Even where a compelling state purpose is present ... [p]recision of [compelled disclosure] is required so that the exercise of our most precious freedoms will not be unduly curtailed except to the extent necessitated by the legitimate governmental objective.'" (Britt v. Superior Court, supra, 20 Cal.3d at p. 856.) (Brackets in original.)[3] It is essential "that the compelled disclosure be narrowly drawn to assure maximum protection of the constitutional interests at stake." (Id., at p. 859.) This constitutional principle denies the validity of the dragnet in order that fundamental liberties are not subordinated to mere convenience. (Schneider v. State (1939) 308 U.S. 147, 161 [84 L.Ed. 155, 164-165, 60 *905 S.Ct. 146]; Parrish v. Civil Service Commission, supra, 66 Cal.2d at p. 274; Fort v. Civil Service Commission (1964) 61 Cal.2d 331, 337 [38 Cal. Rptr. 625, 392 P.2d 385].) Precision of regulation requires a foundation from which it may reasonably be inferred that the inquiry will likely be productive, for "[w]hen the government seeks to require a limitation of constitutional rights ... it bears the heavy burden of demonstrating the practical necessity for the limitation. The [limiting] conditions... must reasonably tend to further the purposes of the government ... and the utility of imposing the conditions must manifestly outweigh the impairment of constitutional rights." (Vogel v. County of Los Angeles, supra, 68 Cal.2d 18, 21; and see City of Carmel-by-the-Sea v. Young, supra, 2 Cal.3d at p. 266.) Simple speculation that an answer may uncover something helpful is not enough. (Britt v. Superior Court, supra, 20 Cal.3d at p. 861, fn. 4.) "[A]n adequate foundation for inquiry must be laid before proceeding in such a manner as will substantially intrude upon ... constitutionally protected activities...." (Gibson v. Florida Legislative Comm. (1963) 372 U.S. 539, 557 [9 L.Ed.2d 929, 942, 83 S.Ct. 889]; and see DeGregory v. Attorney General of New Hampshire (1966) 383 U.S. 825 [16 L.Ed.2d 292, 86 S.Ct. 1148]; Jordan v. Hutcheson (4 Cir.1963) 323 F.2d 597, 606, cf. CBS, Inc. v. Superior Court (1978) 85 Cal. App.3d 241, 251 [149 Cal. Rptr. 421].)
(4b) The challenged interrogatories seek revelation of the most intimate aspects of petitioner's sexual life. Since they are unaccompanied by any affirmative showing that they are likely to turn up material information, it cannot be said that their utility manifestly outweighs petitioner's right of privacy. They are constitutionally overbroad.
Let a peremptory writ of mandate issue, directing the court (1) to vacate its discovery order with respect to defendant's inquiries into plaintiff's sexual activities unrelated to the possible period of conception and (2) to proceed in accordance with the views expressed herein.
White, P.J., and Feinberg, J., concurred.
The petition of the real party in interest for a hearing by the Supreme Court was denied March 29, 1979.
NOTES
[1] As a condition of eligibility for aid, petitioner was required to assign to the county any accrued rights to support and receipt of public assistance operates as an assignment by operation of law. (Welf. & Inst. Code, § 11477, subd. (a).) Petitioner is also required to cooperate with the district attorney in establishing paternity or have good cause for refusal to cooperate. (Welf. & Inst. Code, § 11477, subd. (b).)
[2] The right is invoked against the use of governmental process to compel disclosure. Petitioner is represented by state attorneys but it is the state, over her objection, that seeks, in the form of a judicial order, to compel the answers. When the state itself employs judicial process to compel disclosure, the governmental involvement is obvious (see N.A.A.C.P. v. Alabama (1958) 357 U.S. 449 [2 L.Ed.2d 1488, 78 S.Ct. 1163]) but "judicial discovery orders inevitably involve state-compelled disclosure of presumptively protected information, the [constitutional] principles have equal application to purely private litigation." (Britt v. Superior Court, supra, 20 Cal.3d at 856, fn. 3.) (Italics in original.) "When the inquiry is conducted by the use of compulsory process, the judiciary must bear the responsibility of protecting individual rights." (Liveright v. Joint Committee (M.D.Tenn. 1968) 279 F. Supp. 205, 215. See also Sweezy v. New Hampshire (1957) 354 U.S. 234, 245 [1 L.Ed.2d 1311, 77 S.Ct. 1203] (Opn. of Chief Justice Warren.).) The constitutional protection extends to the plaintiff as well as the defendant. (Britt v. Superior Court, supra, at pp. 857-859.)
[3] The Britt quotation appears originally in Vogel v. County of Los Angeles (1967) 68 Cal.2d 18, 22 [64 Cal. Rptr. 409, 434 P.2d 961], in this form: "Precision of regulation is required so that the exercise of our most precious freedoms will not be unduly curtailed except to the extent necessitated by the legitimate governmental objective."