[Civ. No. 5008. Fifth Dist. Nov. 30, 1979.]

JAMES B. MORALES, JR., et al., Petitioners, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
RICHARD LEE SMITH et al., Real Parties in Interest.

**COUNSEL**

Miller, Katz, Harlem & Dixon and Craig G. McIntosh for Petitioners.

No appearance for Respondent.

King, Eyherabide, Anspach, Friedman & Robinson, Robert E. King, Clifford, Jenkins & Brown, Stephen T. Clifford, Hurlbutt, Clevenger, Long & Vortmann and Robert P. Long for Real Parties in Interest.

## OPINION

## FRETZ, J.*—

### STATEMENT OF THE CASE

Petitioner James Morales seeks a writ of mandate commanding respondent court to vacate its order compelling him to answer interrogatories. The interrogatories were propounded by real party Teresi Trucking, Inc., one of several defendants in a wrongful death action brought by petitioner and his three minor children to recover damages resulting from the death of Phyllis Morales, petitioner's late wife. For the reasons to be explained, we have concluded that the interrogatories must be further limited, but that as so limited, they must be answered by petitioner.

Interrogatory No. 2 demands that the petitioner state the name, current address and telephone number of each woman he dated during his marriage to Phyllis Morales and the calendar dates upon which he saw these women socially. Interrogatory No. 3 asks whether during the period of his marriage to Phyllis Morales the petitioner had sexual relations with women other than Phyllis Morales and if so demands that he state the names, current addresses and telephone numbers of each woman with whom he had sexual relations during that time and the date or dates of the sexual relations with each woman so identified.

The petitioner objected to each of these interrogatories "on the grounds that it cannot possibly lead to any relevant discoverable evidence and it may violate the rights of privacy of certain individuals."

In the trial court the real party in interest filed a motion for an order compelling answers to the interrogatories. The motion was granted with the following limitation: "...Answers limited to contacts with other women within two years before decedent's death."

---

*Assigned by the Chairperson of the Judicial Council.

The question before us is whether a plaintiff in a wrongful death action may be compelled to disclose information regarding his extramarital sexual activities during the period of his marriage to decedent. This question has not previously been answered in California.

The petitioner bases his request upon a right to privacy in sexual relations and the right to associational privacy. In our examination of this question we follow the reasoning and apply the tests of *Britt* v. *Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766]. In that case, the Supreme Court reversed the order of the superior court compelling plaintiffs to disclose names and identities of associations and persons with whom the plaintiffs had affiliated. The case involved a group of homeowners who sued the San Diego Unified Port District, which controlled the San Diego airport, for diminution of property values, personal injuries and emotional disturbance allegedly caused by the operation of the airport. The court found that the right of associational privacy is not absolute but that the government bears a heavy burden in demonstrating the justification for compelling disclosure. The court went on to find that to justify impairment of the right of privacy, there must be a present compelling state interest.

The Supreme Court held that when a litigant invokes judicial assistance to discover, in the context of civil litigation, matters which are within a constitutionally protected zone of privacy, such discovery "must be justified by a compelling state interest and must be precisely tailored to avoid undue infringement of constitutional rights." (*Id.,* at pp. 864-865.)

We direct our attention first to relevancy.

1. ■ THE INQUIRY IS RELEVANT TO THE ISSUE
BEFORE THE TRIAL COURT.

In *Benwell* v. *Dean* (1967) 249 Cal.App.2d 345 at page 349[57 Cal.Rptr. 394], the court stated: "...the statutory and exclusive measure of damages in actions for wrongful death is that embodied in Code of Civil Procedure section 377, which is 'such damages...as under all the circumstances...may be just.' (*Bond* v. *United Railroads,*159 Cal. 270, 276...; *Duclos* v. *Tashjian*, 32 Cal.App.2d 444, 453....) Damages under the provisions of this section 'are measured by the financial benefits the heirs were receiving at the time of death, those reasonably to be expected in the future, and the monetary equivalent of loss of

comfort, society and protection' (*Stathos v. Lemich,* 213 Cal.App.2d 52, 56...); as, stated in *Cervantes v. Maco Gas Co.,* 177 Cal.App.2d 246..., such damages are 'what the heirs received at the time of the death of the decedent and what the heirs would have received had the decedent lived.' (P. 251.) With respect to the loss of comfort, society and protection, this element of pecuniary loss recoverable under section 377 has an actual value which cannot be compensated for by merely nominal damages. (*Griott v. Gamblin,* 194 Cal.App.2d 577, 579...; *Duclos v. Tashjian, supra.*)"

The question of whether extramarital sexual conduct affected the relationship is one of fact to be decided by the trier of fact. Evidence of such conduct is relevant to the nature of the personal relationship and thus as to whether there was any loss of love, companionship, comfort, affection, society, solace, moral support or enjoyment of sexual relations.

There is evidence that this is not simply a "fishing expedition." In the deposition of Cynthia Morales, who married petitioner after decedent's death but who is now divorced from him, there is an indication that during his marriage to decedent petitioner dated and "possibly had frequent sexual relations" with other women.

However, not all such evidence is necessarily relevant. Some limitation of the time to be covered by the discovery may properly be required. What happened 10 years before the decedent's death may or may not have relevance. This is so because the appropriate inquiry in the wrongful death case is the nature of the relationship at date of death. We do not attempt to say *what* period is proper. What is proper in a given case depends upon the facts of the case. The two-year limitation imposed by the trial court in this case does not appear to us to be unreasonable or improper. Of course, we are discussing this matter for purposes of discovery only. ■ As observed in *Fults v. Superior Court* (1979) 88 Cal.App.3d 899 at page 902 [152 Cal.Rptr. 210]: "...relevancy at trial and relevancy for purposes of discovery are two different things. 'An appellate court cannot reverse a trial court's grant of discovery under a "relevancy" attack unless it concludes that the answers sought by a given line of questioning cannot as a reasonable possibility lead to the discovery of admissible evidence or be helpful in preparation for trial.' (*Pacific Tel. & Tel. Co. v. Superior Court* (1970) 2 Cal.3d 161, 173...; Code Civ. Proc., §§ 2016, subd. (b), 2031.)" (*Fults v. Superior Court, supra,* 88 Cal.App.3d 899, 902.)

■ This does not end our inquiry. "When compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information." (*Id.*, at p. 904; see also *Shelton* v. *Tucker* (1960) 364 U.S. 479, 483, 485 [5 L.Ed.2d 231, 234-235, 81 S.Ct. 247].)

Our second inquiry then is whether one or more constitutionally protected zones of privacy are involved.

### 2. THERE IS A PROTECTED RIGHT OF PRIVACY UNDER THE FACTS OF THIS CASE.

The right of privacy is secured by article I, section 1, of the California Constitution. This was added to the California Constitution in 1974. However, privacy was identified as a right protected by the federal Constitution in *Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678], and its application to sexual matters has been steadily expanded (see *Eisenstadt* v. *Baird* (1972) 405 U.S. 438 [31 L.Ed.2d 349, 92 S.Ct. 1029]; *Roe* v. *Wade* (1973) 410 U.S. 113 [35 L.Ed.2d 147, 93 S.Ct. 705]). The right of privacy in sexual matters is not limited to the marital relationship (*Eisenstadt* v. *Baird, supra,* 405 U.S. 438). As was said in *Fults* v. *Superior Court, supra,* 88 Cal.App.3d 899 at page 904: "... [T]hese interrogatories deal with a well established 'zone of privacy,' one's sexual relations. (*Eisenstadt* v. *Baird* (1972) 405 U.S. 438...; *Griswold* v. *Connecticut, supra,* 381 U.S. 479; *Baird* v. *Lynch* (W.D.Wis. 1974) 390 F.Supp. 740, 752; *Mindel* v. *United States Civil Service Commission* (N.D. Cal. 1970) 312 F.Supp. 485, 488.)"

The right to associational privacy was recognized in *Britt.* "As both the United States Supreme Court and this court have observed time and again, however, First Amendment freedoms, such as the right of association, 'are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference.' *(Bates* v. *Little Rock* (1960) 361 U.S. 516, 523...; see, e.g., *White* v. *Davis* (1975) 13 Cal.3d 757, 767....) Indeed, numerous cases establish that compelled disclosure of an individual's private associational affiliations and activities,...frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." *(Britt* v. *Superior Court, supra,* 20 Cal.3d 844, 852.) Since the associational privacy for which protection is requested in this case is concerned with association for extramarital activities, we treat the rights as merging for

purposes of our consideration. ■ We follow the holdings that there is a right to privacy in sexual matters and that it is not limited to the marital relationship. However, we believe that the right is not absolute. As the *Britt* decision said: "Of course, as with all other First Amendment rights, the right of associational privacy is not absolute, and past cases recognize that under some circumstances disclosure may permissibly be compelled. (See, e.g., *Buckley* v. *Valeo, supra,* 424 U.S. 1, 66-68. . . .) Because of the constitutional interests at stake, however, the authorities establish that private association affiliations and activities. . .'are presumptively immune from inquisition. . . .' (*Sweezy* v. *New Hampshire* (1957) 354 U.S. 234, 265-266. . .), and thus the government bears the burden of demonstrating the justification for compelling disclosure. (See, e.g., *Baird* v. *State Bar of Arizona, supra* , 401 U.S. 1, 6-7. . . .) Moreover, the cases also make clear that in this context the government's burden is a particularly heavy one: '[T]o justify any impairment there must be present [a] "compelling state interest. . . [which] justifies the substantial infringement of. . .First Amendment rights. It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation,' [citation]." (*Huntley* v. *Public Util. Com., supra,* 69 Cal.2d at p. 74; see, e.g., *Buckley* v. *Valeo, supra*, 424 U.S. 1, 64. . . .)" (*Britt* v. *Superior Court, supra,* 20 Cal.3d 844, 855.) We believe the same principle and the same tests apply to privacy in sexual matters.

We turn then to the question of the state interest in invasion of the right in the present case.

### 3. ■ THERE IS A COMPELLING STATE INTEREST SUPPORTING INTRUSION INTO THE PETITIONER'S CONSTITUTIONALLY PROTECTED RIGHT OF PRIVACY.

The state is said to have a compelling interest in "facilitating the ascertainment of truth in connection with legal proceedings." (*In re Lifschutz* (1970) 2 Cal.3d 415, 432 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].) In the *Britt* case it was stated that a trial court could properly compel disclosure of protected associational activities when they were directly relevant and disclosure of the plaintiff's affiliation is essential to the fair resolution of the lawsuit (*Britt* v. *Superior Court, supra*, 20 Cal.3d 844, 859). The petitioner here contends that unfairness would result rather than fairness because there would be prejudice

from the disclosure to the jury or trial court of any extramarital activity. On the other hand, the real party in interest argues that unfairness would result if petitioner is allowed to paint an unrealistic picture of his relationship with his deceased wife.

■ ■■■ We are mindful that some detriment to petitioner's interest, and possibly to that of his children,[1] may result. If answers are required for preparation of a fair trial and detriment results from such answers in order to obtain that preparation, the detriment will have to be suffered.

We find that the inquiries here could, as a reasonable possibility, lead to the discovery of potentially admissible evidence or be helpful in preparation for trial.[2]

We then come to the fourth question and decide:

4.  ■  THE ORDER BELOW WAS NOT DRAWN WITH THE REQUIRED NARROW SPECIFICITY.

"'Precision of [compelled disclosure] is required so that the exercise of our precious freedoms will not be unduly curtailed except to the extent necessitated by the legitimate governmental objective.'" (*Britt* v. *Superior Court, supra,* 20 Cal.3d at p. 856, quoting from *Vogel* v. *County of Los Angeles* (1967) 68 Cal.2d 18, 22 [64 Cal.Rptr. 409, 434 P.2d 961].)

The privacy proposed to be invaded in this case is not that of the petitioner alone. If petitioner is required to answer the interrogatories as they are presently framed, he might have to divulge the names, addresses and phone numbers of other people. Their rights also deserve protection. As to them, there is no argument that the right to privacy has been forfeited by filing a lawsuit.

Further, the governmental objective of a fair trial in this case will be served if the petitioner is required to state whether, during some rel-

---

[1] A "lump sum" verdict is required though the total recovery is the aggregate of the pecuniary loss of each of the heirs entitled to recover by reason of the death of the decedent (*Perkins* v. *Robertson* (1956) 140 Cal.App.2d 536, 543 [295 P.2d 972]). Other nonpecuniary detriment to the future father-child relationship may occur.

[2] We are not deciding whether such evidence *would* be admissible at trial.

evant period he dated other women, and, if so, when; and if during such relevant period he had extramarital contacts and, if so, when; without giving the names, addresses, or phone numbers of such people, if they exist. This information will permit defendants to explore the impairment of the relationship between petitioner and his deceased spouse by means consistent with the right of privacy of others. We are aware that requiring these limited answers will, to an extent, expose whatever there may be of a portion of petitioner's life which he may have regarded as protected. We believe the place at which we have drawn the line meets the needs of a fair trial while protecting petitioner's right of privacy to some extent and wholly protecting the rights of others.

For now we rule only that a fair resolution of the lawsuit requires exploration of the nature of the relationship between the deceased wife and her plaintiff husband by some exploration of possible outside sexual activity.

The order of this court dated July 30, 1979, staying these proceedings is dissolved. Let a writ issue directing the Superior Court of Kern County to modify its order so that plaintiff will not be required to give the names, addresses, or telephone numbers of anyone in response to interrogatories 2 or 3. The writ is otherwise denied.

Brown (G. A.), P. J., concurred.

ZENOVICH, J.—I respectfully dissent based upon the fact that compelling answers to interrogatories in this case would violate the bipartite considerations set forth in *Britt* v. *Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766] and constitute a significant invasion of petitioner's privacy.

In *Britt*, the California Supreme Court struck down interrogatories which impermissibly probed into a plaintiff's private associational activities. *Britt* held that a civil litigant invoking the judiciary to discover matters which are in a constitutionally protected zone of privacy must justify the discovery by a compelling state interest and tailor any inquiry so as to avoid undue infringement of protected rights. (*Britt* v. *Superior Court, supra,* 20 Cal.3d at pp. 864-865.) The court also set forth a two-prong test for allowing discovery under such circumstances in civil proceedings: "When such [constitutionally protected]. . .activities are *directly relevant* [original italics] to the plaintiff's claim, *and disclosure* of the plaintiff's affiliations is essential to the fair resolution

of the lawsuit, a trial court may properly compel such disclosure." *(Id.,* at p. 859, italics added.) Because petitioner's right to privacy in regard to sexual relations with others is as sacrosanct as the right to associational freedom (see *Roe* v. *Wade* (1973) 410 U.S. 113, 152-154 [35 L.Ed.2d 147, 176-178, 93 S.Ct. 705]; *Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 453) [31 L.Ed.2d 349, 362, 92 S.Ct. 1029]), application of *Britt* is fitting under the instant factual setting. With its bipartite standard in mind, I conclude that compelling interrogatory answers would be improper for two reasons.

In my opinion, real party has not substantially demonstrated how the interrogatories are *directly relevant* to petitioner's wrongful death action. It is my belief that petitioner has correctly noted that the feelings and actions of the *decedent wife,* rather than the sexual and dating patterns of the plaintiff husband, are the relevant concerns when gauging damages for loss of consortium. This is rather aptly expressed in the language pervading the civil jury instructions given on the issue. BAJI No. 14.40, sixth edition 1977, provides in pertinent part: "If you find that plaintiff (husband) is entitled to a verdict against the defendant and if you find that as a proximate result of the act or omission upon which you base your finding of liability that plaintiff (husband) has suffered or is reasonably certain to suffer in the future any loss of... (*his wife's)* love, companionship, comfort, affection, society, solace or moral support; any loss of enjoyment of sexual relations or the ability to have children or any loss of... (*her*) physical assistance in the operation and maintenance of the home, you shall award... (him) reasonable compensation for any of such losses as may be established by the evidence." (Italics added.) In my opinion, the instruction supports the thesis that petitioner's *wife* and the services which she performed, at the time of her death and those reasonably to be expected in the future, are the proper focus of concern. From real party's standpoint, however, it is arguable that the interrogatories are relevant either because (1) the decedent spouse was not supportive of the plaintiff, or (2) the services provided by the decedent spouse *at the time of her death* were necessarily diminished had the plaintiff husband obtained outside companionship. Although these are plausible considerations, I do not believe that they satisfy the direct relevance standard propounded in *Britt.* In its paraphrase of *Britt,* the court in *Fults* v. *Superior Court* (1979) 88 Cal.App.3d 899, 905 [152 Cal.Rptr. 210] cogently indicated: "Simple speculation that an answer may uncover something helpful is not enough." Applying this analysis to real party's inquiries, relevance would be established only under the assumption that the decedent

spouse *knew of* and *reacted negatively to* the extramarital partners of her husband or if it were proven that the husband *decreased* his affective ties to his former wife during the periods of outside companionship and *whether those decreased ties existed at the time of her death.* An approach condoning such queries would turn discovery and the subsequent trial into a wide ranging search of the husband's activities, diverting attention from the relevant task of assessing the wife's services. Thus, in my opinion, the interrogatories propounded to petitioner are founded upon a rather remote chance of mitigating loss of consortium damages. Sustaining these interrogatories is speculation falling short of the direct relevancy needed to avoid an invasion of plaintiff husband's privacy.

Even if the majority opinion has correctly concluded that the interrogatories are relevant, I am not persuaded that the second prong of the *Britt* test has been satisfied. Before a lower court can compel disclosure in this case, it must be clear that the disclosure of the plaintiff's extramarital sexual and dating habits would be *essential to the fair resolution of the lawsuit.* This closely resembles the relevancy standard used by courts when determining the admissibility of evidence—balancing probative value against the substantial danger of undue prejudice or jury confusion. (See Evid. Code, § 352.) Unlike the less stringent standard usually associated with relevancy in discovery matters (see *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 172-173 [84 Cal.Rptr. 718, 465 P.2d 854]), the court in *Britt* suggested that the prejudicial impact of disclosures to interrogatories must be assessed. The majority opinion employs the broad test of relevancy for discovery matters—whether the inquiries would lead to information helpful at trial. This reasoning ignores the stronger standard of *direct* relevancy articulated in *Britt* when dealing with discovery which might infringe on an individual's privacy. In my opinion, *Britt* indicates that interrogatories like those in the present case should be subjected to a balancing test which weights probative value against prejudicial influence.

Furthermore, the children of the decedent as well as petitioner are parties to the lawsuit. It is my conviction that unfairness would result to the children if petitioner were forced to answer real party's queries about extramarital relationships. Besides the risk that the jury will shift its attention from determining the defendant's negligence to adjudging the morality of the husband's indiscretions, there is a high probability of prejudice to the three minor children who are also plaintiffs in the underlying lawsuit. As the majority opinion recognizes in its first foot-

note, a jury returns one verdict, in a single monetary figure, representing the judgment of aggregate loss which it feels was suffered by all the plaintiffs in the wrongful death action. Although the interrogatories should only theoretically garner evidence relevant to the husband's damages, it is pragmatic to fear that jurors will not confine their consideration of such information to this narrow issue. The possibility that this might prejudice the recoveries of the other plaintiffs prompts me to find that disclosure by petitioner would be unfair under the circumstances of this case. As petitioner contends, "it is clear that a violation of the plaintiff's rights of sexual privacy and to associational privacy could lead to the revelation of information which would lead to the destruction of the minor children's image of their father, and the disruption of the present family unit." In my opinion, a compelling state interest exists to prevent this from happening.

Since these interrogatories appear to merely have indirect relevance and contain an undue risk of prejudice to other parties once disclosures are made, I do not think petitioner should be compelled to answer. Any attempt to compel disclosures is, in my opinion, a violation of his right to privacy.

I would grant the petition for a writ of mandate in this case.

Petitioners' application for a hearing by the Supreme Court was denied February 7, 1980. Bird, C. J., and Mosk, J., were of the opinion that the application should be granted.