COUNTY OF RAMSEY, Appellant,

v.

S. M. F., Respondent.

No. 50287.

Supreme Court of Minnesota.

July 3, 1980.

Tom Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for appellant.

Jacobowski, Doffing, Hennessy & Flannery and William J. Hennessy, St. Paul, for respondent.

Heard by OTIS, YETKA and SCOTT, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This paternity action, brought by Ramsey County pursuant to Minn.Stat. § 257.-252–.253 (1978), was dismissed by the Second Judicial District Court, Family Court Division, for failure of the county to answer certain interrogatories. Because we believe the interrogatories were overbroad, we reverse. We also take this opportunity to note the adoption of new legislation governing paternity cases and to specify how the new legislation should be applied.

This case was brought by Ramsey County on behalf of the mother alleging that defendant S. M. F. is the father of her child born on October 22, 1974. In a deposition in the record, the mother stated that she and S. M. F. had sexual intercourse on two occasions during the period from January to March 1974, when her child was likely conceived. The defendant directed the following interrogatories to the mother, and the county attorney provided the answers indicated [1]:

2. State the name, address and occupation of each and every man with whom you have had sexual intercourse from July, 1973 until the commencement of this action in July of 1978.

ANSWER: Objected to as overly broad and irrelevant as the question encompasses a period broader than that of the ten-month period preceding the birth of the child involved in this action; answer: during December 1973, through November 1974, [S. M. F.], address unknown, employed at Skelly gas station.

6. State whether or not [the mother] had a steady boyfriend in July of 1978.

ANSWER: Objected to as irrelevant and overly broad and it is not likely to lead to the discovery of admissible evidence and because the question encompasses a period much broader than that covered by the ten-month period preceding the birth of the child involved in this action.

The defendant moved for an order directing complete answers to these questions, and the trial court granted the motion. The county petitioned this court for a writ of prohibition, which was denied. Subsequently, the county attorney informed the defendant that the county refused to answer further. The trial court then granted defendant's motion to dismiss the case as a discovery sanction pursuant to Minn.R. Civ.P. 37.02(2)(c).

In its answer to interrogatory 2, the county indicated that the mother had sexu-

---

1. We feel constrained to note that answers to interrogatories should be signed under oath by the party served rather than the party's attorney. See Minn.R.Civ.P. 33.01(1) & (4).

al intercourse only with S. M. F. within 10 months prior to the birth. The defendant argues that similar information as to the other 50 months is necessary to discover whether the mother is lying, *i.e.*, whether she had other relationships which might also have continued during the 10-month period before the birth. As to interrogatory 3, the defendant claims the information is necessary to determine the name of a person who was seen with the mother and resembled the child. The county objects to such discovery as irrelevant and as interfering with the mother's right to privacy.

At the outset, the defendant claims that the county does not have standing to raise such an objection. We need not reach the question of whether the county attorney represents the mother in this case. *Cf.* Minn.Stat. § 257.254 (1978). As a party, the county has standing to raise any objections to the scope of discovery. We find it commendable that the county would object to protect the mother's privacy. In these cases in which the mother is "expected, if not compelled to cooperate * * * in order to remain eligible for assistance," *Hepfel v. Bashaw*, 279 N.W.2d 342, 346 (Minn.1979), it is quite proper for the county to protect the mother from any unnecessary intrusion.

On the merits of the interrogatories, we note initially that evidence of sexual relations remote from the time of conception would not be admissible at trial. *State v. Stephon*, 179 Minn. 80, 228 N.W. 335 (1929). It is true that the scope of discovery extends to inadmissible evidence "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Minn.R.Civ.P. 26.02(1). However, the interrogatories here "deal with a well established 'zone of privacy,' one's sexual relations." *Fults v. Superior Court*, 88 Cal.App.3d 899, 904, 152 Cal.Rptr. 210, 213 (1979), citing *inter alia Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and *Eisenstadt v. Baird*,

405 U.S. 438 (1972). The "zone of privacy" is one which this court has recognized as well. *See Price v. Sheppard*, 307 Minn. 250, 239 N.W.2d 905 (1976). In *Price v. Sheppard*, we held that an intrusion into the right of privacy can only be justified by a legitimate and important state interest,[2] and even then the intrusion must be by the least intrusive means. 307 Minn. at 257–58, 239 N.W.2d at 910–11.

In *Fults v. Superior Court*, the court also considered a broad interrogatory in a paternity case asking about the mother's sexual experience. After noting the foregoing principles, the court vacated the discovery order stating:

> When compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information. * * It is essential "that the compelled disclosure be narrowly drawn to assure maximum protection of the constitutional interests at stake" * * *.

88 Cal.App.3d at 904, 152 Cal.Rptr. at 213 (citations omitted).

As in *Fults v. Superior Court*, we hold that the interrogatories here were too broad. The mother answered as to sexual relations around the date of conception, but interrogatory 2 asks for information regarding her sexual activity over a 5-year period. We need not rule whether there was any period of time short of that requested but greater than that answered already which could validly be inquired into, as such a question is not presented here. As to interrogatory 3, if the defendant wants to know who was with the mother on a specific date at a specific place, he could ask that question so long as the standard of Minn.R.Civ.P. 26.02(1) is met. The county's objections to the interrogatories as overbroad were valid and dismissal as a discovery sanction was improper. We therefore remand for further proceedings.

2. It is the state, by means of the court order, which would compel answers to the interrogatories. *See Fults v. Superior Court*, 88 Cal.App.3d 899, 903 n.2, 152 Cal.Rptr. 210, 212 (1979).

Since this case was presented at oral argument, new legislation has been adopted significantly affecting the conduct of paternity cases. Because this case must be remanded, we take this opportunity to specify how the new legislation should be applied.

The new legislation, 1980 Minn. Laws ch. 589, adopts with certain alterations the Uniform Parentage Act, 9A U.L.A. 579–622 (Master Ed. 1979).[3] The new statute provides, in relevant part, as follows:

Sec. 11.

257.61 *Pre-trial proceedings*

As soon as practicable, after an action to declare the existence or nonexistence of the father and child relationship has been brought, a pre-trial hearing shall be held in accordance with the rules of civil procedure. The public shall be barred from the hearing. A record of the proceeding or any portion thereof shall be kept if any party requests, or the court so orders.

Sec. 12

257.62 *Blood and genetic tests*

Subdivision 1. The court may, and upon request of a party shall, require the child, mother, or alleged father to submit to blood tests or genetic tests, or both. The tests shall be performed by a qualified expert appointed by the court.

Subd. 2. The court, upon reasonable request by a party, shall order that independent tests be performed by other qualified experts.

Subd. 3. In all cases, the court shall determine the number and qualifications of the experts.

Subd. 4. The refusal to submit to blood tests or genetic tests, or both, may be admitted into evidence and is subject to the sanctions within the jurisdiction of the court.

Sec. 13.

257.63 *Evidence relating to paternity*

Subdivision 1. Evidence relating to paternity may include:

\*      \*      \*      \*      \*      \*

(c) Genetic and blood test results, weighed in accordance with evidence, if available, of the statistical probability of the alleged father's paternity;

(d) Medical or anthropological evidence relating to the alleged father's paternity of the child based on tests performed by experts. If a man has been identified as a possible father of the child, the court may, and upon request of a party shall, require the child, the mother, and the man to submit to appropriate tests; and

(e) All other evidence relevant to the issue of paternity of the child.

Sec. 14.

257.64 *Pretrial recommendations*

Subdivision 1. On the basis of the information produced at the pretrial hearing, the court may, and if requested by a party, shall evaluate the probability of determining the existence or nonexistence of the father and child relationship in a trial and whether a judicial declaration would be in the best interest of the child. On the basis of the evaluation, an appropriate recommendation for settlement shall be made to the parties, which may include any of the following:

(a) That the action [sic] dismissed with or without prejudice;

(b) That the alleged father voluntarily acknowledge his paternity of the child;

(c) That the matter be compromised by an agreement among the alleged father, the mother, and the child, in which the father and child relationship is not determined but in which a defined economic obligation is undertaken by the alleged father in favor of the child and, if appropriate, in favor of the mother, subject to approval by the court. \*   \*   \*

Subd. 2. If the parties accept a recommendation made in accordance with subdivision 1, judgment shall be entered accordingly. The court shall advise all parties that pre-trial recommendations are not binding and will have no effect if the

---

**3.** We previously had urged the legislature to re-examine this area of the law, referring in particular to the Uniform Parentage Act. *See* *Hepfel v. Bashaw*, 279 N.W.2d 342, 347–48 (Minn.1979); *State ex rel. Ortloff v. Hanson*, 277 N.W.2d 205, 207 (Minn.1979).

recommendation is disregarded and the matter is set for trial.

Subd. 3. If a party refuses to accept a recommendation made under subdivision 1 and blood tests have not been taken, the court shall require the parties to submit to blood tests, if practicable. Thereafter the court shall make an appropriate final recommendation. If a party refuses to accept the final recommendation the action shall be set for trial.

\* \* \* \* \* \*

Sec. 19.

257.69 *Right to counsel; costs; free transcript on appeal*

\* \* \* \* \* \*

Subd. 2. The court may order reasonable counsel, expert witnesses, and guardian ad litem fees, and other costs of the trial and pre-trial proceedings, including appropriate tests, to be paid by the parties in proportions and at times determined by the court. \* \* \*

1980 Minn. Laws ch. 589, §§ 11–14, 19.

This legislation makes the results of the more sophisticated blood tests admissible as evidence. *Id.,* § 13. It also establishes a procedure by which the trial courts can direct that such tests be taken. Under the statute, the court may, on its own motion, require such tests, *id.,* § 12, and must order such tests if any party requests them or if a party refuses to accept the court's pre-trial recommendation.[4] *Id.,* §§ 12, 14.

■ We can imagine no situation in which it would not be in the interest of a paternity plaintiff, whether it be the county, the mother or the child, to have blood tests taken. When such reliable evidence is available,[5] it is no longer sensible to rely solely on customary, less reliable evidentia-

ry techniques. We therefore believe that in every paternity case, the party bringing the action should request the court to order blood tests as early as possible in the litigation. Under 1980 Minn. Laws ch. 589, § 12, the court would then be required to order such tests. If the party fails to make such a request, the trial court should order such tests at an early stage on its own motion under section 12.[6]

■ One of the primary goals of utilizing the results of blood tests is to promote the early settlement of these cases. *See* Uniform Parentage Act, comments to §§ 12, 13, 9A U.L.A. at 602, 605. Assuming that the early availability of blood test results will lead to settlements, we believe the preferable practice would be for the county to ask the putative father to take such tests at county expense before initiating a lawsuit. Settlement of these paternity cases prior to litigation or at the earliest possible stage of litigation would be to the benefit of the county, the child, the mother, the putative father, the courts and the public.

With the above directions on how to apply the new legislation, we remand this case to the district court for further proceedings.

Reversed and remanded with directions.

---

**4.** The legislature intends that the words "may" and "shall" in sections 12 and 14 be interpreted as permissive and mandatory, respectively. Minn.Stat. § 645.44, subds. 15 & 16 (1978).

**5.** Blood tests which are now available are "the most reliable means for making the determination of paternity more accurate and efficient." *State ex rel. Ortloff v. Hanson,* 277 N.W.2d 205, 206 (Minn.1979). *Ortloff* contains a thorough

explanation of the type of blood tests here referred to.

**6.** 1980 Minn. Laws ch. 589, § 19, provides that the trial court may include the expense of such tests as costs of the trial or pre-trial proceedings. We believe the costs of such tests should be charged to the county when it is a party unless the trial court finds suitable reasons for charging them to another party.