STATE of Iowa ex rel. Zelma M.
PARCEL, Appellee,

v.

Ricky ST. JOHN, Appellant.

No. 65827.

Supreme Court of Iowa.

July 15, 1981.

Eldon J. Winkel and James A. McGlynn
of Winkel, Nitchals & Winkel, Algona, for
appellant.

David L. Leitner, Asst. Kossuth County
Atty., for appellee.

Keith A. Kreiman, Hampton, Iowa, for
amicus curiae Legal Services Corp. of
Iowa.

McGIVERIN, Justice.

This appeal arises from an action to de-
termine paternity and impose a child sup-
port obligation under chapter 252A, The
Code 1979, the Uniform Support of Depend-
ents Law. Respondent Ricky St. John, the
putative father, appeals from the trial
court's order finding him to be the father.
We reverse and remand.

We will consider the following issues:

1. Whether we should grant this inter-
   locutory appeal; and

2. Whether the trial court abused its
   discretion by ordering entry of a de-
   fault judgment on the merits of the
   paternity issue as a sanction for the
   putative father's failure to comply
   with orders that he pay for blood
   tests.

Zelma Parcel is the mother of Eric Par-
cel, born August 13, 1975. She receives
AFDC payments and has therefore assigned
to the Department of Social Services any
rights she has to child support payments
from Eric's natural father. § 252A.13.

In December 1978 the Department of So-
cial Services filed a petition pursuant to
chapter 252A. § 252A.5(5); *Foreman v.
Wilcox*, 305 N.W.2d 703 (Iowa 1981). The

petition alleged that Eric's natural father is the respondent, Ricky St. John. The petition also asked that St. John be directed to pay "fair and reasonable" child support.

St. John, who at all times has been represented by counsel, answered and filed a request that the court order blood tests for himself, the child, and the mother. The State on behalf of the mother acquiesced in this request. The trial court ordered blood tests and directed St. John to pay the expenses of the tests. When St. John did not submit to the tests, the State filed a motion to compel discovery, seeking an order directing him to cooperate in the blood test procedures. Respondent filed a resistance in which he asserted he had decided to forego the blood tests unless someone else paid for them because he had learned that the cost would be prohibitive. The court sustained the State's motion to compel discovery and directed respondent to submit to a blood test and to pay the costs of the tests. Blood tests were performed on all three persons.

Although the tests were performed, respondent did not pay for them. The State moved for a default judgment under Iowa R.Civ.P. 134(b)(2)(C) as a sanction for failure to pay for the blood tests. Although the motion alleged St. John's lack of compliance with several previous discovery orders, at the time of the motion the only order with which he had failed to comply was the one ordering him to pay for the blood tests. Respondent resisted this motion and also filed an application for counsel and blood tests at public expense. He did not assert in the application any constitutional or statutory basis for these requests. Respondent alleged his inability to pay for counsel and the tests but did not allege or show any specific facts from which the court could determine his indigency. The State filed a resistance.

On August 8, 1980, Judge Murray S. Underwood filed an order denying respondent's motion for counsel at public expense "for all the reasons set forth in the [State's] resistance" to that motion. Since the resistance dealt solely with legal arguments

that there is no procedural due process right to counsel at public expense in paternity actions regardless of indigency, the court's order incorporating the legal arguments of the State's resistance did not decide whether St. John was in fact indigent. The August 8 order also provided that unless the respondent paid the $210 fee for the blood tests before September 19, the State's motion for default would be sustained and "an order will be entered by the court designating that it is established as a fact that the respondent is the father of the child, Eric Parcel." Impliedly, therefore, St. John's request for blood tests at public expense was overruled.

St. John did not pay the $210 fee for the blood tests by September 19. Therefore, on October 2, 1980, the court filed an order finding that St. John is the father of Eric Parcel and directing that default judgment be entered against St. John on the issue of paternity. This order did not determine the amount of child support. The court also ordered entry of judgment against St. John for $210 in favor of the blood bank that processed the tests. On October 23 the court set a hearing for November 17 on the issue of the amount of child support. However, on October 28 respondent filed a notice of appeal from "the final order, judgment and decree entered on October 2, 1980." The notice did not designate an appeal from any other rulings of the court.

I. *Jurisdiction of the appeal.* Respondent filed his notice of appeal before the trial court had fixed the amount of his child support obligation as requested by the State's petition. Therefore, the October 2, 1980, order, which found him in default for failure to pay for the blood tests and to be the father of the child, was not a final judgment. It did not dispose of all the essential issues raised in the petition. *Poulsen v. Russell*, 300 N.W.2d 289, 293 (Iowa 1981); *Decatur-Moline Corp. v. Blink*, 283 N.W.2d 347, 349 (Iowa 1979). Since the October 2 order was not a final judgment, we must decide whether to grant an interlocutory appeal. Iowa R.App.P. 1(c). We also must determine what issues may properly be raised in an appeal from that order.

When a party takes an appeal from what the party believes to be a final judgment, but which is actually an interlocutory order, we can still entertain the appeal. *Id.* We consider the papers upon which the appeal was taken as an application for an interlocutory appeal under Iowa R.App.P. 2. The interlocutory appeal may be granted if the order "involves substantial rights and will materially affect the final decision." Iowa R.App.P. 2(a); *Anderson v. Low Rent Housing Commission*, 304 N.W.2d 239, 243 (Iowa 1981); *Smith v. Korf, Diehl, Clayton and Cleverley*, 302 N.W.2d 137, 138–39 (Iowa 1981). Although not required to, we hereby grant an interlocutory appeal from the October 2 order in which the court exercised its discretion and found St. John in default for failure to pay for blood tests. Other claims raised by St. John, including his constitutional claims to blood tests and counsel at public expense, will not be considered in this interlocutory appeal from the October 2 order.

II. *Default judgment for failure to pay for blood tests.* The October 2 order decided that because St. John had failed to pay for the blood tests, he was adjudged the father of the child. Therefore, we are presented with the issue whether the trial court erred in finding, by default, that St. John is the father of Eric Parcel.

The trial court had entered two orders requiring St. John to submit to the tests and pay for them. Although St. John finally complied with the orders and submitted to the tests, he did not pay for them. The court, therefore, entered the default judgment as a sanction for failing to pay. Iowa R.Civ.P. 134(b)(2)(C). We have, therefore, a finding of paternity for failure to pay $210. We conclude that the court abused its discretion by imposing the harsh sanction of a default judgment of paternity for failure to pay $210 for blood tests.

A trial court's decision to impose discovery sanctions under rule 134 will not be reversed unless there has been an abuse of discretion. *McQuillen v. City of Sioux City*, 306 N.W.2d 789, 791 (Iowa 1981); *Eikelberg v. Deere & Co.*, 276 N.W.2d 442, 446 (Iowa 1979); *Smiley v. Twin City Beef Co.*, 236 N.W.2d 356, 360 (Iowa 1975).

We do not find substantial evidence to support the trial court's exercise of its discretion. *See Paige v. City of Chariton*, 252 N.W.2d 433, 437 (Iowa 1977). Under *Smiley*, we must find substantial evidence that St. John's failure to pay for the tests was willful or in bad faith. *McQuillen*, 306 N.W.2d at 791. St. John claims that he did not have the resources to pay for the tests. In ordering entry of a default judgment, the trial court made no finding whether St. John had the ability to pay. The only reference in the record to St. John's indigency was in one of the court's orders granting the State's motion to compel discovery after St. John failed to submit to the test. That order of June 2, 1980, required St. John to pay for the blood tests. The order noted, however, that he would not be required to pay the State's expenses of obtaining the order because his failure to perform blood tests "was by reason of lack of funds." *See* Iowa R.Civ.P. 134(a)(4). It is unclear whether St. John had the ability to pay on October 2. Where failure to comply with a discovery order is based on a party's inability to comply, the harsh sanction of a default judgment should not be imposed. *See Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255, 1267 (1958).

We also conclude that the harsh sanction of default is disproportionate to St. John's failure to comply with discovery orders. At the time the motion for default judgment was made, St. John reluctantly had complied with orders to submit to the tests. He had not, however, paid for them. Ordinarily the selection of sanctions is for the trial court's discretion. *McQuillen*, 306 N.W.2d at 792. We believe that the trial court abused its discretion in finding paternity as a sanction for this failure to pay after submitting to the tests. The court could have ordered the State, which desired blood tests after St. John did not take them, to advance the costs of the tests, subject to final taxation against St. John as costs if he lost

on the merits. *See County of Ramsey v. S. M. F.*, 298 N.W.2d 40, 44 (Minn.1980); § 675.41, The Code 1981 (effective January 1, 1981). The court in this case entered judgment against St. John for the costs of the tests, which St. John does not challenge on appeal. This was an adequate sanction. In exercising its discretion in selecting sanctions for failure to comply with discovery orders, the court should keep in mind that "radical surgery should not be performed on the . . . case if conservative therapy will bring about a cure." *State v. Marchellino*, 304 N.W.2d 252, 257 (Iowa 1981).

Finally, we do not recommend a finding of paternity by default for failure to pay a sum of money. In a paternity action, the child has an interest in an accurate determination of his father on the merits. Ordinarily, such a long-term, important relationship should not be established by default judgment for failure to pay for discovery. *See Throndset v. J. R.*, 302 N.W.2d 769, 774 (N.D.1981).

III. *Constitutional issues.* Before the default judgment was entered, St. John requested blood tests and counsel at public expense. We decline to discuss the merits of these issues in this interlocutory appeal.

St. John moved for blood tests at public expense, but the record does not show that he cited any constitutional provision to support his argument in this case. He claims his lawyer raised the same issue in another case, but we do not have a record of it. On appeal, he asserts that his constitutional rights to due process and equal protection entitle him to free blood tests. *See Little v. Streater*, — U.S. —, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981). The State resisted the motion on the ground that neither the rules nor statutes of Iowa entitle St. John to blood tests at public expense. The trial court did not expressly overrule the motion, but did order St. John to take the tests and pay for them.

We doubt whether St. John has sufficiently raised the question before the trial court yet of his constitutional claim to blood tests at public expense. *In re Abbott*, 303 N.W.2d 149, 153 (Iowa 1981); *State v. Paul-*

*sen*, 293 N.W.2d 244, 247 (Iowa 1980). Because we reverse and remand on other grounds, we need not reach the constitutional issues. *City of Dubuque v. Telegraph Herald, Inc.*, 297 N.W.2d 523, 529 (Iowa 1980); *Salsbury Laboratories v. Iowa Department of Environmental Quality*, 276 N.W.2d 830, 837 (Iowa 1979). On remand, St. John may develop his argument and record on this claim.

St. John also contends that the trial court erred in failing to appoint counsel for him at public expense. He claims on appeal that he is constitutionally entitled to appointed counsel. *See generally Lassiter v. Department of Social Services*, — U.S. —, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (no per se due process right to appointed counsel in proceeding to terminate parental rights). Since the October 2 order from which this interlocutory appeal is taken did not rule on the appointed counsel issue, we will not reach the merits. An interlocutory appeal from a specific ruling is not a means of reviewing all previous rulings of the court by which a party may have been aggrieved.

The case is reversed and remanded for further appropriate proceedings.

REVERSED AND REMANDED.