[No. F009987. Fifth Dist. Dec. 12, 1988.]

ROBERT MENDEZ, Petitioner, v.
THE SUPERIOR COURT OF MERCED COUNTY, Respondent;
HELEN LOUISE PEERY, Real Party in Interest.

[No. F010027. Fifth Dist. Dec. 12, 1988.]

THE COUNTY OF MERCED, Petitioner, v.
THE SUPERIOR COURT OF MERCED COUNTY, Respondent;
HELEN LOUISE PEERY, Real Party in Interest.

## COUNSEL

McCormick, Barstow, Sheppard, Wayte & Carruth, Michael G. Woods, Deborah A. Byron, Brunn, Thayer, Flynn & Harvey, Charles K. Brunn and Gerald E. Brunn for Petitioners.

No appearance for Respondent.

Canelo, Hansen & Wilson and James H. Wilson for Real Party in Interest.

## OPINION

**ARDAIZ, J.**—In this case involving sexual assault and battery, we are called upon to review the trial court's denial of defendants' motions under Code of Civil Procedure section 2017, subdivision (d),[1] to discover plaintiff's sexual conduct with third persons. We will leave the trial court's denial undisturbed after reviewing the several grounds asserted by defendants as justifying such discovery.

On August 5, 1985, Helen Peery (plaintiff) and her husband Claude filed a complaint against Robert Mendez, the County of Merced (County) and Doe defendants. She claimed that in August of 1984 Deputy Robert Mendez, a fellow employee in the Merced County Sheriff's Department, accosted her, grabbed her in a forceful manner, locked her in a room, grabbed her hair and forced her to orally copulate him. She further alleges that on three other occasions he assaulted her at work and attempted to have her orally copulate him again. Each of the assaults culminated in threats to her or her family if she divulged the assaults.

Ultimately she reported the incidents to her superiors who allegedly assigned the investigation of the matter to one of Mendez's best friends. She claims that although the investigating officials received positive and uncontroverted information substantiating her claims, they took no punitive action against Mendez. She alleges since first reporting the matter she and members of her family, including some of her five children, have received

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

anonymous death threats. She also claims the County knew of Mendez's propensity to sexually harass fellow female employees prior to his assault on her and, also, that the County took no action on her claims after discovering the truth of them.

She asserts the above facts give rise to claims for both intentional and negligent assault and battery and both intentional and negligent infliction of emotional distress. She seeks damages in the sum of $750,000 for physical and psychic injury. Her husband requested damages for loss of his wife's services and consortium. In an amended complaint plaintiff also requests punitive damages of $500,000.

The answers of defendants Mendez and the County, if any, are not in the record for the writ petition. We do not, therefore, know what defenses are claimed.

On June 3, 1986, plaintiff was deposed. She was asked whether since her marriage she had "ever participated in any sexual relationship with anyone?" She answered "No." She also denied any physical contact of a sexual nature. Defendants obtained deposition testimony from others which indicated that plaintiff had engaged in extramarital affairs, at least one of her alleged paramours being a sergeant at the sheriff's department.

Plaintiff brought a motion *in limine* to exclude from trial any evidence of her sexual conduct with anyone other than defendant Mendez. After memoranda were filed by defendants in opposition to the motion, plaintiff's husband moved to dismiss his claim for loss of consortium. Defendants' opposition to the motion to exclude evolved into noticed motions for discovery under former section 2036.1 of plaintiff's sexual conduct with persons other than defendant Mendez. After a hearing the trial court denied plaintiff's motion and granted defendants' motions to discover.

Plaintiff brought a motion for reconsideration. Included with the motion was an offer to stipulate. The offer provided in relevant part: "Plaintiff, . . . does offer to stipulate with all Defendants that Plaintiff shall introduce no evidence whatsoever at trial, through any witness, nor question or elicit testimony from any witness with reference to the below listed issues, and shall make no reference to, or comment on said issues in jury selection, opening statement, closing argument or any other time in the presence of the jury:

"1. The sexual conduct, acts, or lack thereof, of Plaintiff with anyone other than Defendant MENDEZ;

"2. The stability or instability of Plaintiff's marriage and/or the nature and quality of her relationship with her husband, nor any detrimental effect thereon occasioned by or claimed to be occasioned by, the acts of sexual harassment, assault and battery of Defendant MENDEZ as set forth in the First Amended Complaint."

The court heard the matter after receiving opposition from the defendants; the court upon reconsideration denied the discovery requests, making plaintiff's stipulation a court order. Defendant County then brought a motion for reconsideration, limiting its discovery request to employees of the sheriff's department from 1980 through 1984. After briefing and a hearing, the motion was denied.

The County sought a writ of mandate in this court to compel the trial court to grant the discovery motion. We denied that petition without prejudice noting that section 2017, subdivision (d), became effective July 1, 1987, and that any ambiguities concerning the ultimate effect of respondent's order would be resolved upon reconsideration by respondent and application of the new statute.

Defendant County then filed a new motion under section 2017, subdivision (d), in superior court requesting discovery of plaintiff's sexual history with others at the sheriff's department. Defendant Mendez also renewed his discovery request of plaintiff's sexual conduct with persons other than Mendez. The court heard and denied the motions.

"1. The Motions of defendant, COUNTY OF MERCED and defendant, ROBERT MENDEZ to conduct discovery pursuant to CCP § 2017(d) are denied;

"2. Plaintiff shall introduce no evidence whatsoever at trial, through any witness, nor question or elicit testimony from any witness on the below listed issues, and shall make no reference to, or comment on said issues in jury selection, opening statement, closing argument or any other time in the presence of the jury:

"(a) The sexual conduct, acts or lack thereof, of plaintiff with anyone other than defendant MENDEZ;

"(b) The stability or instability of plaintiff's marriage and/or the nature and quality of her relationship with her husband, nor any detrimental effect thereon occasioned by, or claimed to be occasioned by, the acts of sexual harassment, assault and battery of defendant MENDEZ as set forth in amended complaint;

"(c) Plaintiff is ordered to abide by the terms and conditions of this order and avoid, in all respects, the issues set forth above at the time of trial."[2]

In response to the trial court's denial, both defendants filed petitions for writs of mandate in this court. On June 8, 1988, this court authorized the issuance of orders to show cause, subsequently filed and sent to the parties.[3]

## DISCUSSION

The Legislature first addressed discovery of an individual's sexual history in 1985 with the passage of section 2036.1, the predecessor statute to section 2017, subdivision (d). Section 2036.1 provided: "In any civil action alleging conduct which constitutes sexual harassment, sexual assault, or sexual battery, a party is required to show 'good cause' in accordance with Section 2036 to obtain discovery regarding the plaintiff's sexual conduct with individuals other than the alleged perpetrator. That showing shall be made by noticed motion and shall not be made or considered by the court at an ex parte hearing."

Section 2036 read: "(a) A party required to show 'good cause' to obtain discovery under any provisions of Chapter 2 (commencing with Section 1985) or of Article 3 (commencing with Section 2016) of Chapter 3 of this title shall show specific facts justifying discovery and that the matter is relevant to the subject matter of the action *or* reasonably calculated to lead to the discovery of admissible evidence.

"(b) The showing set forth in subdivision (a) of this section and any showing made in opposition thereto shall be made in the trial court prior to that court's determination of the matter." (Italics added.)

Section 2036.1 was one of five provisions added or amended by chapter 1328 of the 1985-1986 legislative session. All of the provisions in that chapter were directed toward limiting the discovery or admission of evidence of the sexual conduct of a complaining party in a civil suit or administrative proceeding concerning sexual harassment, sexual assault or sexual battery. As section 1 of the bill, the Legislature declared: "The Legislature finds and declares that it is the existing policy of the State of California to ensure that the causes of action for claims of sexual harassment, sexual assault, or sexual battery are given proper meaning. The discovery of sexual

---

[2] We do not read the court's order as limiting defendants' ability to introduce such evidence at trial if relevant. The order denies defendants' discovery requests and limits plaintiff's ability to present certain kinds of evidence.

[3] At oral argument the parties stipulated that the writ petitions could be consolidated by this court.

aspects of complainant's lives, as well as those of their past and current friends and acquaintances, has the clear potential to discourage complaints and to annoy and harass litigants. That annoyance and discomfort, as a result of defendant or respondent inquiries, is unnecessary and deplorable. Without protection against it, individuals whose intimate lives are unjustifiably and offensively intruded upon might face the 'Catch-22' of invoking their remedy only at the risk of enduring further intrusions into details of their personal lives in discovery, and in open quasi-judicial or judicial proceedings.

"The Legislature is mindful that a similar state of affairs once confronted victims in criminal prosecutions for rape, who often ran the risk of finding their own moral characters on trial during the prosecution of their assailants. The Legislature has taken measures to curb those abuses in rape proceedings. It is the intent of the Legislature to take similar measures in sexual harassment, sexual assault, or sexual battery cases.

"The Legislature concludes that the use of evidence of a complainant's sexual behavior is more often harassing and intimidating than genuinely probative, and the potential for prejudice outweighs whatever probative value that evidence may have. Absent extraordinary circumstances, inquiry into those areas should not be permitted, either in discovery or at trial."

With the revamping in California of the entire process of civil discovery in the Civil Discovery Act of 1986, the substance of section 2036.1 was reenacted as section 2017, subdivision (d). Section 2017, subdivision (d), provides in relevant part: "In any civil action, alleging conduct that constitutes sexual harassment, sexual assault, or sexual battery, any party seeking discovery concerning the plaintiff's sexual conduct with individuals other than the alleged perpetrator is required to establish specific facts showing good cause for that discovery, and that the matter sought to be discovered is relevant to the subject matter of the action and reasonably calculated to lead to the discovery of admissible evidence. This showing shall be made by noticed motion and shall not be made or considered by the court at an ex parte hearing. . . ."

Upon examination of section 2036.1 and section 2017, subdivision (d), it becomes apparent the only difference between the statutes is the substitution of "and" for "or" in the required showing of relevance and likelihood of the information leading to admissible evidence.

In *Vinson* v. *Superior Court* (1987) 43 Cal.3d 833 [239 Cal.Rptr. 292, 740 P.2d 404], a suit involving claims of sexual harassment and intentional infliction of severe emotional distress, the California Supreme Court

reviewed the propriety of a trial court's order requiring the plaintiff to undergo a medical and psychological examination without any limitation as to probing into her sexual history or practices. The court concluded the defendants were entitled to conduct a psychiatric examination given the facts pleaded by the plaintiff. (*Id.* at p. 840.) However, the court went on to find the defendants had failed to demonstrate "good cause" under section 2036.1 to delve into plaintiff's sexual history and practices during the examination. (*Id.* at pp. 842-844.) In its analysis of good cause under sections 2036.1, the court acknowledged the constitutional considerations involved in any inquiry into a plaintiff's sexual history and practices.

■ A plaintiff has a constitutional right to privacy; a right which has both general federal recognition (*Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]) and specific state recognition. (Cal. Const., art. I, § 1; *Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 841.) This right to a protected zone of privacy includes one's sexual conduct. (*Ibid.*; see also *Boler* v. *Superior Court* (1987) 201 Cal.App.3d 467, 473 [247 Cal.Rptr. 185]; *Morales* v. *Superior Court* (1979) 99 Cal.App.3d 283, 289 [160 Cal.Rptr. 194]; *Fults* v. *Superior Court* (1979) 88 Cal.App.3d 899, 904-905 [152 Cal.Rptr. 210].) The filing of a sexual harassment suit, even one which also alleges severe emotional distress, does not operate as an implicit waiver of the complainant's right to privacy in sexual matters.

"In *Britt* v. *Superior Court* (1978) 20 Cal.3d 844 . . . , we faced a similar conflict between discovery procedures and the parties' constitutional rights. . . .

"Responding to the assertion that the plaintiffs had waived their right to privacy by bringing suit, we stated that 'while the filing of a lawsuit may implicitly bring about a partial waiver of one's constitutional right of associational privacy, the scope of such "waiver" must be narrowly rather than expansively construed, so that plaintiffs will not be unduly deterred from instituting lawsuits by the fear of exposure of their private associational affiliations and activities.' (*Id.* at p. 859.) Therefore, we noted, an implicit waiver of a party's constitutional rights *encompasses only discovery directly relevant to the plaintiff's claim and essential to the fair resolution of the lawsuit.* [Citations.]" (*Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 842, italics added.)

■ Where discovery involves matters encompassed by the right to privacy, courts recognize that "judicial discovery orders inevitably involve *state-compelled* disclosure . . . ." (*Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 856, fn. 3 [143 Cal.Rptr. 695, 574 P.2d 766], italics in original.) Therefore, in reviewing a party's resistance to a discovery order, based on the

claim that it entrenches upon a constitutional right, we treat the compelled disclosure as a product of state action subject to constitutional constraints. (*Ibid.*)

" 'The constitutional right of privacy is "not absolute"; it may be abridged when, but only when, there is a "compelling" and opposing state interest.' . . . The following guidelines assist in determining when disclosure of private information may be compelled: 'In an effort to reconcile these sometimes competing public values, it has been adjudged that inquiry into one's private affairs will *not* be constitutionally justified simply because inadmissible, and irrelevant, matter sought to be discovered *might* lead to other, and relevant, evidence.['] [Citation.] " 'When compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information.' " [Citations.]

" 'And even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a "careful balancing" of the "compelling public need" for discovery against the "fundamental right of privacy." ' " (*Binder* v. *Superior Court* (1987) 196 Cal.App.3d 893, 900 [242 Cal.Rptr. 231], italics in original.)[4]

In this context, the *Vinson* court acknowleged the Legislature's efforts to address both the individual's right of privacy and the defendant's right to a fair trial with the passage of section 2036.1. ". . . we note the Legislature recently enacted a measure designed to protect the privacy of plaintiffs in cases such as these. Section 2036.1 (operative until July 1, 1987; presently, substantially the same provision is contained in § 2017, subdivision (d)), provides that in a civil suit alleging conduct that constitutes sexual harassment, sexual assault, or sexual battery, any party seeking discovery concerning the plaintiff's sexual conduct with individuals other than the alleged perpetrator must establish specific facts showing good cause for that discovery, and that the inquiry is relevant to the subject matter and reasonably calculated to lead to the discovery of admissible evidence." (*Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 843, fn. omitted.)

Thus, in interpreting section 2017, subdivision (d), we are mindful that the provisions of the disputed section must harmonize with applicable constitutional provisions. (See *California Housing Finance Agency* v. *Elliott*

---

[4] Other cases reviewing challenged discovery under a claim of violation of the right to privacy not involving sexual conduct are in accord. (*El Dorado Savings & Loan Assn.* v. *Superior Court* (1987) 190 Cal.App.3d 342 [235 Cal.Rptr. 303]; *Kahn* v. *Superior Court* (1987) 188 Cal.App.3d 752 [233 Cal.Rptr. 662]; *Board of Trustees* v. *Superior Court* (1981) 119 Cal.App.3d 516 [174 Cal.Rptr. 160].)

(1976) 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193].) Any interpretation of section 2017, subdivision (d), that afforded less protection to the right of privacy of the litigant than that set forth in *Britt* would subject the section to a substantial constitutional challenge.

Further, we must be cognizant that the type of discovery limited by section 2017, subdivision (d), involves not only plaintiff's right to privacy, but the privacy of uninterested third persons. Insofar as defendants seek to pry into plaintiff's sexual conduct with others, they necessarily seek to pry into the third party's sexual conduct. (*Boler* v. *Superior Court, supra,* 201 Cal.App.3d 467, 472-474.) While theoretically such third parties could seek to appear in this action and oppose defendants' discovery motions (see *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 657-658 [125 Cal.Rptr. 553, 542 P.2d 977]), such privilege under these circumstances is meaningless; first and foremost, what is sought by defendants is the right to ferret out the existence and identity of such third parties. Section 2017, subdivision (d), protects not only a party's constitutional right to privacy against intrusive discovery, it also protects the privacy rights of nonparty third persons.

By its terms, section 2017, subdivision (d), limits discovery to evidence "relevant to the subject matter of the action and reasonably calculated to lead to the discovery of admissible evidence." The parallel between the statutory language of section 2017, subdivision (d), and the constitutional demands of the right of privacy are striking.

■ To meet constitutional demands, the requirement of section 2017, subdivision (d), for "specific facts showing good cause" must be interpreted as requiring factual assertions demonstrating a compelling public need for the disclosure—that the requested discovery is essential to a fair resolution of the case. (*Britt, supra,* 20 Cal.3d at p. 859; see also *In re Lifschutz* (1970) 2 Cal.3d 415, 431 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; *Vinson* v. *Superior Court, supra,* 43 Cal.3d 833, 842.) Further, the requirement in section 2017, subdivision (d), that the "inquiry be relevant to the subject matter and reasonably calculated to lead to the discovery of admissible evidence," ensures that the request will be narrowly drawn with specificity. "It is essential that the compelled disclosure be narrowly drawn to assure maximum protection of the constitutional interests at stake." (*Fults* v. *Superior Court, supra,* 88 Cal.App.3d at p. 904.)

Prior to the passage of section 2036.1 and section 2017, subdivision (d), the trial court was required to imply the constitutional restrictions detailed in *Britt* and *Binder* to any discovery request involving a plaintiff's sexual history or practice. (See *Boler* v. *Superior Court, supra,* 201 Cal.App.3d at

pp. 472-474; *Fults* v. *Superior Court, supra,* 88 Cal.App.3d at p. 904; *Morales* v. *Superior Court, supra,* 99 Cal.App.3d at p. 289.) The legislative expressions addressing this area have now, in our view, codified the "balancing process" and have "obviated the need for us to engage in an individualized balancing of privacy with discovery . . . ." (*Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 843.)

The *Vinson* court reached the same conclusion regarding section 2036.1 as we reach with respect to section 2017, subdivision (d). "Section 2036.1, thus amply protects plaintiff's privacy interests. We anticipate that in the majority of sexual harassment suits, a separate weighing of privacy against discovery will not be necessary. It should normally suffice for the court, in ruling on whether good cause exists for probing into the intimate life of a victim of sexual harassment, sexual battery, or sexual assault, to evaluate the showing of good cause in light of the legislative purpose in enacting this section and the plaintiff's constitutional right to privacy." (43 Cal.3d at p. 844.)

While the *Vinson* court included in its analysis the stated legislative purpose expressed with regard to section 2036.1, the failure to republish that purpose in the recodification of section 2017, subdivision (d), does not indicate a change of intent by the Legislature. ■ Clearly, where the Legislature specifically delineates its purpose in enacting a statute and then recodifies that statute under a new number, there is no reasonable inference that the Legislature has altered its original intent or motivation. (See 2A Sutherland, Statutory Construction (4th ed. 1975) § 51.04, pp. 497-498; *Old Homestead Bakery, Inc.* v. *Marsh* (1925) 75 Cal.App. 247, 258-259 [242 P. 749].)

■ Stripped of editorial comment the essence of the legislative intent is: "absent extraordinary circumstances, inquiry into . . . [a complainant's sexual behavior] should not be permitted, either in discovery or at trial."

Within this context, we are here called upon to decide whether the trial court abused its discretion in denying defendant's motion under section 2017, subdivision (d), to discover plaintiff's sexual behavior with others.

*The Relevancy of Plaintiff's Sexual Conduct With Others to the Issue of Plaintiff's Claimed Emotional Distress and Extent of Her Damages.*

■ Both defendants maintain that discovery of plaintiff's sexual conduct with others is relevant to a proper determination of both the genesis of plaintiff's claimed emotional distress and the extent of her damages. The defendants rely substantially upon the following language in *Vinson* v. *Superior Court, supra,* 43 Cal.3d at pages 839-840: "In the case at bar, plaintiff

haled defendants into court and accused them of causing her various mental and emotional ailments. Defendants deny her charges. As a result, the existence and extent of her mental injuries is indubitably in dispute. In addition, by asserting a causal link between her mental distress and defendants' conduct, plaintiff implicitly claims it was not caused by a preexisting mental condition, thereby raising the question of alternative sources for the distress. We thus conclude that her mental state is in controversy."

In arguing that information on plaintiff's extramarital sexual conduct is necessary in order to determine the cause of her emotional distress, the County argues: "Obviously, the possible connection between Plaintiff's arguably unstable marriage, her own infidelity, and her alleged emotional distress is significant. Whether claims of mental suffering stem from conduct other than MENDEZ' is clearly relevant to the subject matter of this case. If Plaintiff was engaging in sexual activities with men other than her husband and MENDEZ, these sexual activities could be relevant as to whether the conduct alleged concerning MENDEZ was the sole cause of Plaintiff's pain and suffering, or merely one of many similar causes. . . .

". . . Plaintiff's total sexual activity while in the Petitioner's employ should be evaluated by Petitioner's expert psychiatrist to determine what emotional problems of Plaintiff relate to the alleged acts of MENDEZ."

Both defendants then seek to distinguish the court's holding in *Vinson,* wherein the California Supreme Court rejected the defendants' argument that the plaintiff's claims of emotional distress resulting from sexual harassment opened the door to inquiry into her sexual history and practices. (*Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 842.) The court noted: "Plaintiff does not contend the alleged acts were detrimental to her present sexuality. Her sexual history is even less relevant to her claim." (*Ibid.*) The court found the defendants failed to establish specific facts justifying inquiry into plaintiff's sexual conduct or to demonstrate how such discovery would be relevant. (*Id.* at pp. 843-844.)

Defendants claim that their causation argument establishes such specific facts and relevance. *We reject their contention.*

Neither defendant offers a declaration by a mental health professional that such evidence would be relevant and necessary to a determination of the cause of plaintiff's emotional distress. The specific facts in defendant's possession in no way suggest that any of plaintiff's claimed infidelities led to emotional distress or, indeed, that there was any preexisting emotional distress. The request is based solely on the speculative presumption that infidelity may lead to emotional distress; nowhere have defendants demon-

strated any factual support for this presumption. It would be anomalous for a trial court to accept conjecture as a basis for discovery when there is no submitted support for the underlying assumption.

Defendants both also assert that discovery is necessary in order that they may properly determine the extent or amount of plaintiff's damages. Under this approach, defendants argue that even if Mendez's alleged assault was a proximate cause of the plaintiff's emotional distress, the information sought is necessary so that they can determine properly the impact of Mendez's conduct upon "her particular sensibilities" and properly apportion the damages, so much attributable to Mendez's conduct and so much attributable to her alleged unstable marriage and purported infidelities. Defendants maintain entitlement to discovery so that, if it is found that Mendez's conduct was the proximate cause of her severe emotional distress, they might seek to show that her extramarital affairs already had engendered a certain amount of emotional distress and they should not be required to pay damages on this amount. The analogy would be to a plaintiff claiming total disability from an accident. The tortfeasor would be able to show that the plaintiff already suffered from a 10 percent disability at the time of the accident and therefore defendant is only liable for 90 percent of the disability.

While we have substantial reservations about the relevance of plaintiff's sexual conduct with others, the entire argument can best be addressed by resolution of whether, under these facts, inquiry may be made at all concerning plaintiff's sexual history with respect to either the cause of action for assault and battery or the cause of action for intentional infliction of emotional distress.

First and foremost, we have difficulty accepting the defendants' basic notion that plaintiff's claimed injury of severe emotional distress is somehow apportionable between preexisting anxieties and the mental trauma caused by the defendants' alleged conduct. We address here emotional distress distinctly related to particular conduct separate and apart from the turmoil created by life in general. Were we to accept defendants' proposition, arguably a defendant might pry not only into the sexual affairs of the plaintiff and her spouse, but into her financial affairs, her health (medical records) and the health of her spouse, children, parents and siblings. Problems in any of these areas *might* have caused preexisting emotional upset.

The California Supreme Court in *In re Lifschutz, supra,* 2 Cal.3d 415 rejected the defendants' contention that plaintiff, by filing a personal injury claim asking for recovery from "mental and emotional distress," had totally waived psychotherapist-patient privilege for records relating to the treatment of a mental ailment 10 years earlier. The court's analysis rested in part

on right to privacy aspects of psychotherapeutic communications. (*Id*. at pp. 431-432.) The court noted: "If the provision had as broad an effect as is suggested by petitioner, it might effectively deter many psychotherapeutic patients from instituting any general claim from mental suffering and damage out of fear of opening up all past communications to discovery. This result would clearly be an intolerable and overbroad intrusion into the patient's privacy, not sufficiently limited to the legitimate state interests embodied in the provision and would create opportunities for harassment and blackmail." (*Id*. at p. 435.) Further, "disclosure can be compelled only with respect to *those mental conditions* the patient-litigant has 'disclosed . . . by bringing an action in which *they* are in issue' [citation]." (*Ibid.*, italics in original.)

We note that defendant County's requested discovery relates to all of plaintiff's alleged sexual partners within the sheriff's department for the four years prior to the incident in question. County makes no showing of how incidents within such a substantial time span would bear upon the issue herein. Defendant Mendez has not limited his request in any respect. Neither request seems "narrowly drawn" to the claimed reason here. (*Britt* v. *Superior Court, supra,* 20 Cal.3d at p. 859.)

Therefore, with respect to the cause of action of an intentional and/or negligent infliction of emotional distress, the trial court did not abuse its discretion in finding defendants failed to establish good cause in light of the restrictions of section 2017, subdivision (d). (*Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 844.)

Additionally, assuming the request was narrowly drawn seeking other causes of emotional distress stemming from sexual conduct, the question remains whether section 2017, subdivision (d), condones such inquiry in general. In its statement of purpose to section 2036.1, the Legislature specifically provided that: "The Legislature concludes that the use of evidence of a complainant's sexual behavior is more often harassing and intimidating than genuinely probative, and the potential for prejudice outweighs whatever probative value that evidence may have. Absent extraordinary circumstances, inquiry into those areas should not be permitted, either in discovery or at trial."

The Legislature clearly envisioned inquiry into the sexual privacy of a plaintiff only under circumstances or facts of an extraordinary nature: "extraordinary" is defined as "going far beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable." (Webster's New World Dict. (2d ed. 1982) p. 497.)

An essential aspect of the damage in any case of sexual harassment, sexual assault or sexual battery is the outrage, shock and humiliation of the individual abused. We cannot conceive of a circumstance where a cause of action for sexual assault, battery, or harassment could accrue devoid of any consequential emotional distress. (See *Meritor Savings Bank* v. *Vinson* (1986) 477 U.S. 57, 66-67 [91 L.Ed.2d 49, 59, 106 S.Ct. 2399]; *Henson* v. *Dundee* (11th Cir. 1982) 682 F.2d 897, 904; *Howard University* v. *Best* (D.C.App. 1984) 484 A.2d 958, 979-980; Note (1981) 14 U.C. Davis L.Rev. 711, *Sexual Harassment in the Work Place: New Rules for an Old and Dirty Game.*) Thus, the average or usual case would normally carry with it a concomitant claim for emotional upset inflicted by the conduct. (See *Robinson* v. *Jacksonville Shipyards, Inc.* (M.D.Fla. 1988) 118 F.R.D. 525.)

The legislative statement of purpose compels the conclusion that because such distress is inextricably intertwined in the cause of action that to allow privacy intrusion in the ordinary case would have a chilling effect on the pursuit of a cause of action for sexual harassment or sexual assault. Any other conclusion would render the statute meaningless in the face of a simple claim for damages involving consequential mental distress. Thus, the legislative requirement that only in extraordinary circumstances (as opposed to ordinary circumstances) is inquiry to be permitted, compels the conclusion that the Legislature did not intend, and its statement of purpose disavows, that a simple claim for derivative emotional trauma waives the right of privacy.

Defendants' argument, taken to its natural conclusion, would allow inquiry into anything that might conceivably cause some measure of distress or anxiety without regard to its protected nature. It creates the very Catch-22 the Legislature was seeking to avoid. The Legislature has emphatically stated, and we agree, that such inquiry would at most generate results of minimal probative value and should be discouraged. We see no basis for this court to place its imprimatur on the concept alleged by defendants to the destruction of the statute's protection.

■ We hold that in a case involving sexual harassment, sexual assault or sexual battery, the bare fact that plaintiff alleges that the improper behavior produced emotional distress will not justify a defendant's requested invasion of plaintiff's sexual privacy under section 2017, subdivision (d). In order to justify such inquiry, either the plaintiff must claim some special damage (see, e.g., *Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 842; *Morales* v. *Superior Court, supra,* 99 Cal.App.3d at p. 289) or defendant must demonstrate some extraordinary circumstance attendant to plaintiff's claim. ■ Here, neither instance occurred. We conclude, therefore, that the trial court did not abuse its discretion in finding the defendants

failed to establish good cause in light of the restrictions of section 2017, subdivision (d). (*Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 844.)

### *The Necessity of Further Discovery of Plaintiff's Sexual Conduct in Order to Properly Question Potential Witnesses for the Existence of Bias, Interest or Motive.*

■ Both defendants assert discovery of plaintiff's sexual conduct with others is necessary in order to properly question potential witnesses for the existence of bias, interest or motive, aiding the jury's assessment of witness credibility. The essence of the argument is that a witness's past sexual involvement with plaintiff is relevant to that witness's credibility. Defendant Mendez claims, "In order to apply these guidelines [Evid. Code, § 780][5] in assessing the testimony of witnesses such as [the sergeant], the jury must have information concerning the nature of the witness's relationship with [plaintiff]."

The trial court properly denied defendants' motion; to have done otherwise would have sanctioned the wholesale questioning of numerous people about the most intimate aspects of their lives without any showing that any of these people might ever appear as a witness. While we are unwilling to say as a matter of law that defendants are totally precluded from this line of inquiry at trial, any such request must first be directed to the trial court and will be considered under the strict requirements of Evidence Code sections 780 and 783, as well as the court's discretion under Evidence Code section 352.

### *County's Vicarious Liability and Whether Plaintiff's Claim Falls Under the Exclusivity Provisions of the Workers' Compensation Act.*

County next argues that because one potential basis for its liability is vicarious liability, "[t]his fact alone constitutes 'good cause' as mandated by former Cal. Civ. Proc. § 2036.1 and current Cal. Civ. Proc. § 2017 (d)." They further contend: "In addition, [Plaintiff's] sexual conduct with her fellow employees is relevant as to whether or not the Exclusive Remedy Doctrine of the worker's compensation system is applicable to this case, and whether or not this Petitioner should be liable for what may be the Plain-

---

[5] Section 780 of the Evidence Code, general rule as to credibility: "Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to any of the following: . . . [¶](f) The existence or nonexistence of a bias, interest, or other motive. . . . [¶](j) His attitude toward the action in which he testifies or toward the giving of testimony. . . ."

tiff's custom and practice of engaging in sexual activities with her fellow employees."

Defendants fail to disclose to this court any authority that provides a basis for the conclusion that plaintiff's alleged consensual sexual conduct with other employees might have any bearing on the applicability of the Workers' Compensation Act for Mendez's assault and threats. Under these circumstances we find no basis supportive of discovery.

Both defendants also argue, without any citation to authority, that plaintiff's prayer for punitive damages against Mendez "demonstrates the 'extraordinary circumstances' justifying discovery contemplated by the Legislature in enacting C.C.P. Section 2017 (d)." We, therefore, deem this argument abandoned. (*Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706, 710-711 [152 Cal.Rptr. 65].)

*Defendants' Contention That Good Cause Was Shown for Discovery of Plaintiff's Sexual Conduct Under Section 2017, Subdivision (d), Because the Information Was Relevant to the Issue of Plaintiff's Credibility.*

 Next, defendants maintain plaintiff's sexual history bears upon her credibility. Although finely framed, County's argument appears to assert, and conclude, that sexually-active people may be less credible than more chaste individuals. Taken to its natural conclusion, if such an interpretation has substance, then County's claim of relevance would arguably justify discovery of the sexual practices of all potential witnesses. In order to accept the legitimacy of the deposition inquiries as to Peery's other sexual activities on the grounds asserted by County, the basic proposition must be accepted that promiscuity has a bearing on one's veracity.

As we have stated, section 2017, subdivision (d), requires a showing of "specific facts showing good cause" for inquiry into sexual conduct with individuals other than the perpetrator. However, County furnishes no support for the thinly veiled proposition that promiscuity engenders prevarication other than speculation and innuendo. The argument is predicated upon a perception and stereotype that has neither a basis in experience nor proof. Common perceptions do not rise to the level of truth simply because of repetition or general regard. Clearly, the "specific facts showing good cause" mandated by section 2017, subdivision (d), are lacking in County's argument.

Mendez argues that evidence of plaintiff's alleged extramarital affairs will be potentially admissible to assail her denial under oath, at the June 3

deposition, of having engaged in extramarital conduct. In addressing this argument, Mendez notes that at the time of the deposition inquiry, plaintiff's husband had alleged a cause of action for loss of consortium. Assuming, arguendo, that the line of inquiry might have had some relevance on that issue, that cause of action was dropped by the time of the trial court's order herein. Therefore, any relevancy the information might have had to the cause of action disappeared with the cause of action.

Mendez asserts that plaintiff's denials coupled with contradictory evidence from other witnesses constitutes specific facts supporting the relevance of the evidence as to plaintiff's credibility. Mendez contends plaintiff was untruthful in her denials and that discovery of impeaching evidence is proper to attack her veracity. Mendez, however, overlooks several issues.

As the consortium cause of action was dropped, any remaining relevancy must be predicated upon its impact on credibility. In order to justify further discovery on this issue, the requirements of both section 2017, subdivision (d), coupled with the constitutional protections of plaintiff's right of privacy must be observed. The admonition of *Board of Trustees* v. *Superior Court, supra,* 119 Cal.App.3d 516, 525, bears repeating. "And even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.' "

In balancing "compelling public need" against the "fundamental right of privacy," the probative value of the sought-after information is a substantial consideration. Jefferson provides an excellent yardstick for a determination of the issue of materiality and probative value: "This involves the strength of the relationship between the evidence and inferences derived therefrom and the issue upon which the evidence is offered, and whether such evidence tends to prove a *main issue* or a *collateral matter*. If proffered evidence offers strong inferences on a main issue in a case, its probative value is substantial. If the evidence affords only weak inferences of fact on a major issue, its probative value is obviously weak or slight. Also, if such evidence tends to prove some collateral, disputed issue, such as impeachment of a witness on a collateral matter, its probative value is less than that of evidence offering substantial proof of a main issue." (1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 22.1, p. 589, italics added.)

As we have noted, proof as to plaintiff's alleged extramarital affairs could not, being irrelevant directly on the issue of credibility, have been independently shown on that issue. However, questions were asked and denials given. Absent the existence of a contradictory statement, therefore, the line

of inquiry is irrelevant. Thus, the question and the contradictory proof are, at best, collateral.

■ As noted succinctly by Witkin: "If the matter could have been proved without any statement of the witness to contradict, it can also be proved to contradict his statement. (See *People* v. *Chin Mook Sow* (1877) 51 C. 597, 600; *Moody* v. *Peirano* (1906) 4 C.A. 411, 416, . . . ['If the answer of the witness is a matter which would be allowed on your part to prove in evidence . . . , then it is a matter on which you may contradict him']; *People* v. *Factor* (1932) 125 C.A. 618, 621, . . . ; McCormick 3d, §§ 36, 47; 3A Wigmore (Chadbourn Rev.) §§ 1003 et seq., 1020 et seq.; 81 Am.Jur.2d, Witnesses § 613.)" (3 Witkin, Cal. Evidence (3d ed. 1986) Trial, § 1984, pp. 1941-1942.)

■ The matter at issue at the time of the trial court's order had clearly become a collateral inquiry on credibility. We are unmoved by Mendez's argument that further discovery on this issue should be compelled or inquiry permitted. Mendez does not deny that he has impeaching witnesses and the record substantiates their existence. Defendants' showing not only fails to legitimate further inquiry in a discovery proceeding of this nature, it emphasizes the lack of "compelling need" balanced against further inquiry in an area that is collateral.

Further, Mendez's argument is weakened by the substantial question whether such evidence will be permitted at trial. Section 2017, subdivision (d), requires that the requested information be "reasonably calculated to lead to discoverable evidence." We have already determined that the line of inquiry has become inappropriate. Mendez's and County's position would imply that the existence of an inconsistent statement is admissible to attack credibility. However, there must be a statement to attack. ■ If the statement to be impeached is not admissible then the impeachment of it is not permissible. (*People* v. *Belmontes* (1983) 34 Cal.3d 335, 341 [193 Cal.Rptr. 882, 667 P.2d 686]; *People* v. *Blackburn* (1976) 56 Cal.App.3d 685, 693 [128 Cal.Rptr. 864].) ■ Further, specific instances of conduct relevant only to prove "a trait of his character [are] inadmissible to attack or support the credibility of a witness." (Evid. Code, § 787.)

Section 2017, subdivision (d), provides in pertinent part that prior to inquiry with respect to plaintiff's sexual conduct there must be a showing of relevancy: "This showing shall be made by noticed motion and shall not be made or considered by the court at an ex parte hearing." Defendants failed to make such noticed motion, required then under sections 2036 and 2036.1, before questioning plaintiff. We cannot overlook the possibility that the trial court, upon application, in exercise of its discretion, might impose a

sanction, including striking the questions and responses, for defendants' failure to observe the prescribed procedure.

Defendants assert that plaintiff waived any objections to their failure to abide by the statutory requirements. First, the record reflects that plaintiff's counsel made a relevancy objection during the deposition just prior to the inquiry herein. It is unclear though as to the specifics of the inquiry objected to by plaintiff. Of course, this issue remains for ruling by the trial court. Second, at least one case suggests the waiver rule does not apply in the sexual privacy context and we cannot require a specific objection to preserve the issue for appeal. (*Boler* v. *Superior Court, supra,* 201 Cal.App.3d at p. 472, fn. 1.)

Under these circumstances—the collateral nature of the evidence, the failure to subscribe to noticed motion and showing of good cause, and the substantial question of trial admissibility of the impeaching evidence—we see no justification for further discovery and intrusion into plaintiff's privacy on the tendered issue of credibility.

Defendant Mendez also suggests the evidence was relevant to plaintiff's credibility in a third way. Insofar as plaintiff claimed that she forebore from reporting the incident for several months to her superiors out of "fear of defendant Mendez and his 'high-ranking sheriff friends,'" defendant suggests this evidence is relevant to her credibility. Specifically, defendant points to the fact that the sergeant was defendant Mendez's superior. The thrust of this argument seems to be that, if plaintiff were having an affair with someone in the department with power, she should not have been afraid to report the incidents.

The claimed relevancy appears extremely speculative, obtuse and remote. Further, since even the County's more limited request seeks the names of *all* employees with whom she had sexual relations, the request is clearly overbroad for this avowed purpose. (See *Morales* v. *Superior Court, supra,* 99 Cal.App.3d at pp. 291-292.) The result of granting the request would be a probing, under court compulsion, of the consensual private affairs of third party employees of the sheriff's department by their employer. Defendants represented at oral argument that if their discovery request were granted they did not intend to question plaintiff any further on the matter. The County would therefore be subpoenaing members of the sheriff's department, questioning them under oath about their sexual conduct with plaintiff and having the power to compel responses. Given the speculative nature of the defendants' arguments and the highly intrusive nature of the request on third parties, we cannot say the trial court abused its discretion.

Alternatively, insofar as defendants want such information to impeach plaintiff with her failure to make a "fresh complaint," the evidence is not relevant. Plaintiff admits she told no one initially about the assaults. Defendants want to use this failure to show that such things normally would be reported and plaintiff's failure to do so makes it possible/probable that such events did not occur. However, the fact that plaintiff may have had or been having illicit relationships with others does not bolster defendants' "impeachment." At best, defendants would end up with a list of people plaintiff did not tell. We fail to see how the existence and length of such a list makes it more or less likely that plaintiff is telling the truth.

With respect to the issue of credibility, we conclude that further inquiry or discovery on this issue cannot "as a reasonable possibility lead to the discovery of admissible evidence or be helpful in preparation for trial." (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 173 [84 Cal.Rptr. 718, 465 P.2d 854].) On this issue of credibility, therefore, there is no practical necessity for the further discovery of plaintiff's sexual history. (See *Fults* v. *Superior Court, supra,* 88 Cal.App.3d 899, 905.)

The trial court did not abuse its discretion in denying further discovery on this basis.

The order to show cause is ordered discharged. The petition for writ of mandate is denied.

Woolpert, Acting P. J., and Sarkisian, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.