[Nos. B118843, B121277. Second Dist., Div. Four. July 22, 1998.]

BARRENDA L. et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
COUNTY OF LOS ANGELES, Real Party in Interest.

**COUNSEL**

Pate & Pate, Linda Wallace Pate, Voorhies & Kramer, Richard C. Voorhies and R. Brian Kramer for Petitioners.

No appearance for Respondent.

Collins, Collins, Muir & Traver and Peter Stacy for Real Party in Interest.

**OPINION**

**HASTINGS, J.**—In these related writ proceedings we conclude that the County of Los Angeles and various of its employees, real parties in interest, have failed to demonstrate good cause to require petitioners to answer questions at depositions relating to sexual encounters other than those directly at issue in this litigation. We also conclude that real parties have failed to demonstrate good cause to require an independent psychological examination designed to invade the same privacy rights addressed during the depositions. Accordingly, we issue a writ of mandate directing the trial court to reverse its rulings ordering petitioners to answer the deposition questions and ordering petitioners to undergo the psychiatric examinations.

STATEMENT OF FACTS

*The Action*

Petitioners are Barrenda L. and Shiffon B., each of whom was a minor at the time of the alleged incidents that gave rise to this litigation. Each is a

plaintiff in an action against real parties in interest in Los Angeles County Superior Court case No. BC149788.[1]

It is alleged in the second amended complaint that Shiffon B. was declared a dependent child under Welfare and Institutions Code section 300 shortly after her birth in March 1979. Barrenda L., born in October 1978, was declared a dependent child in 1985. Each was placed in the foster home of Karla Jarett Coleman—Shiffon B. on February 1, 1989, and Barrenda L. on September 1, 1989. The allegations of the second amended complaint pertinent to our discussion are as follows:

"12. That on or about February of 1989, continuing through on or about July 7, 1992, Karla Jarett Coleman's adult son, Anthony Colbert, repeatedly raped, sexually abused and assaulted and battered plaintiff, Shiffon B[.], in the presence of plaintiff, Barrenda L[.].

"13. That on or about September of 1989, continuing through on or about October 10, 1992, and thereafter, Karla Jarett Coleman's adult son, Anthony Colbert, repeatedly raped and sexually assaulted plaintiff, Barrenda L[.], in the presence of plaintiff, Shiffon B[.], resulting in Barrenda L[.] having three pregnancies: one abortion in November, 1989 at age eleven, one pregnancy resulting in live birth in July, 1993, and a third aborted pregnancy in or about the summer of 1994."

Petitioners seek to establish liability against real parties in interest for entrusting them to the Coleman foster home. They assert that they were "forced to incur expenses for medical and/or psychological treatment and are informed and believe and therefore allege that they will continue to incur such expenses in the future. . . ." They also allege that each "suffered severe, permanent and disabling injuries and great mental suffering all to their damage. . . ."

*The Depositions (No. B118843)*

During the deposition of each petitioner, their counsel objected to and instructed petitioners not to answer specific questions that counsel perceived to be an invasion of privacy. Real parties moved to compel answers.

The subject questions asked Barrenda L. were: (1) "Will you tell us how many children you have?" (2) "Did you give birth to a baby in May 1996 at

---

[1]Family Planning Associates Medical Group, Inc., was also named as a defendant in the action and was a real party in interest to these proceedings. We have been advised that summary judgment has been granted in favor of Family Planning Associates Medical Group, Inc., and that this matter is now moot as to that entity.

the California Medical Center?" (3) "And do you remember—I have a document here dated April 27th, 1996, and that was, I think, a couple months prior to the delivery of your second child, and under medical information here it says: Pregnant female, pregnant yes, number of pregnancies four, number of abortions three. [¶] Do you recall telling someone at the Mc-Claren Children's Center back in April of 1996 that you had three prior abortions?" (4) "Prior to telling Josh that Anthony had raped you, had you had sexual intercourse with anyone besides Anthony, Perry?" (5) "Had you ever been sexually molested before you were placed in Karla Coleman's house?" (6) "When Anthony had sex with you, when he attacked you and he used his penis, was that the first time that you had sex with someone who used their penis on you?"

Only one question to Shiffon was included in the motion: "Prior to your placement with Karla Jarett Coleman, had anyone sexually attacked you?"

The declaration of Attorney Peter L. Stacy, counsel for real parties in interest, supplies the only evidentiary showing for good cause. The pertinent portions of the declaration are as follows:

"6. Good cause exists to question plaintiff Barrenda L[.] concerning whether she has given birth to other children or become pregnant again. As [Barrenda L.] was born on 10/27/78, she did not reach the age of majority until 10/28/96. [Barrenda L.] remained under the jurisdiction of COUNTY Department of Children & Family Services ('DCFS'). A review of DCFS records, pursuant to a WIC Section 827 Petition, reveals that [Barrenda L.] was five months pregnant as of 2/28/96. See the Detention Report filed May 1, 1996 attached hereto as Exhibit 'I.' It is indeed relevant and likely to lead to the discovery of admissible evidence to question her about this pregnancy, whether it was consensual, and what if any, emotional damages resulted from it as opposed to the allegations of the complaint. Furthermore, there is good cause to question [Barrenda L.] about her sexual contact with others besides the perpetrator, COLBERT, as [Barrenda L.] had told her social worker that she had been raped at a party in Los Angeles. Although she has offered an explanation at her deposition, it is relevant and likely to lead to the discovery of admissible evidence to question [Barrenda L.] further on such issues. It is certainly relevant to the issue of negligence and violation of mandatory statutory duties as to what [Barrrenda L.] told or withheld from her social workers goes to both [Barrenda L.]'s credibility and the duties of the social workers.

"7. Likewise, plaintiff Shiffon B[.] should be made to answer questions as to whether she had been sexually molested or sexual contact while under the

jurisdiction of DCFS or otherwise. [Shiffon B.] has told a social worker that she lied about sexual contact with COLBERT and [Barrenda L.] after initially reporting that she had such contact. See the lettergram and Case Activity Log attached hereto as Exhibit 'J.' Now at her deposition she recanted her lie. A review of DCFS records also reveals that, on 9/8/94, [Shiffon B.] allegedly made a further allegation of rape by a 31 year old male. See the Case Activity Log attached hereto as Exhibit 'K.' Questioning is indeed relevant as to this instance and any further instances of sexual molestation as to the issues of damages; veracity/credibility of [Barrenda L.]; and as to what information the defendant social workers had in order to perform their duties."

On December 9, 1997, the court ruled on the motion and denied the relief sought on the first two questions asked of Barrenda L. but granted relief on the remaining five questions.

On January 28, 1998, petitioners filed their petition for writ of mandate and requested an immediate stay. The matter was designated No. B118843. On February 27, 1998, we issued an alternative writ, issued a temporary stay order, and set the matter for hearing on May 14, 1998. On March 20, 1998, real parties filed their return to the alternative writ.

*The Independent Psychological Examinations (No. B121277)*

In March 1998, real parties filed a motion to compel an independent psychological examination of each petitioner. It was urged that because petitioners were seeking to recover emotional distress damages they had placed their mental state in issue, and therefore good cause existed for the examination. The motion was supported by the declaration of counsel Peter L. Stacy. He declared that he had attempted to work out an appropriate limitation to the scope of the examination with counsel for petitioners but that petitioners' counsel would only stipulate to such an examination on the basis that "[t]here will be no questioning concerning prior or subsequent sexual encounters." This was unacceptable to real parties.

The concluding paragraph of counsel's declaration states: "There is good cause for the Court to order [petitioners] to undergo an [independent psychological examination] as [petitioners] have brought negligence actions against the COUNTY and seek to recover for mental/psychiatric injuries sustained as a result of the COUNTY's alleged negligence. An [independent psychological examination] is the only available means for discovering issues directly relevant to causation and damages. Further, without an [independent psychological examination], the COUNTY will be put at a serious

and unfair disadvantage in defending claims which [petitioners] have brought." Attached to counsel's declaration is the curriculum vitae of I. Lee Gislason, M.D., F.R.C.P.(C), a staff psychiatrist from the University of California at Irvine, the doctor who was to perform the examinations.

Petitioners opposed the motion, asserting that real parties in interest had "failed to show good cause and extraordinary circumstances to discover [petitioners'] sexual history."

On April 13, 1998, the court granted the motion "based upon the grounds that [petitioners] have placed their state of minds at-issue and in controversy. (CCP 2032(a).)"

On April 21, 1998, petitioners filed a petition for writ of mandate and requested a temporary stay of the independent psychological examination. We issued an alternative writ and stay on April 28, 1998, and ordered a hearing for July 16, 1998. We also issued an order continuing the hearing in No. B118843 to July 16, 1998, "so that it may be heard contemporaneously with related mandate petition B121277."

## DISCUSSION

### The Right to Privacy and Discovery

■ "A right to privacy was recognized in the seminal case of *Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]. It protects both the marital relationship (*ibid.*) and the sexual lives of the unmarried [citation]. More significantly, California accords privacy the constitutional status of an 'inalienable right,' on a par with defending life and possessing property. (Cal. Const., art. I, § 1; *White* v. *Davis* (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222].) California's privacy protection similarly embraces sexual relations. [Citations.]" (*Vinson* v. *Superior Court* (1987) 43 Cal.3d 833, 841 [239 Cal.Rptr. 292, 740 P.2d 404].)[2]

■ In the context of discovery, the right of privacy regarding sexual relations is recognized in Code of Civil Procedure section 2017, subdivision (d) (all further references will be to this code unless otherwise noted): "In any civil action alleging conduct that constitutes sexual harassment, sexual assault, or sexual battery, *any party* seeking discovery concerning the plaintiff's sexual conduct with individuals *other than the alleged perpetrator* is

---

[2]Because the right to privacy is a constitutionally protected interest, a challenged invasion of the right is properly addressed by issuance of an alternative writ. (*Tylo* v. *Superior Court* (1997) 55 Cal.App.4th 1379, 1382 [64 Cal.Rptr.2d 731].)

required to establish *specific facts showing good cause for that discovery*, and that the matter sought to be discovered is relevant to the subject matter of the action and reasonably calculated to lead to the discovery of admissible evidence." (Italics added.)

The mere fact that a plaintiff has initiated an action seeking damages for extreme mental and emotional distress arising out of conduct of a sexual nature does not ipso facto provide "good cause" for discovery of other sexual conduct. (*Vinson v. Superior Court, supra*, 43 Cal.3d at pp. 841-842.) The issue is resolved by balancing the right of privacy with the defendant's right to discovery. (*Id.* at p. 842.) Section 2017, subdivision (d) (formerly section 2036.1) provides the necessary balancing procedure. (*Vinson v. Superior Court, supra*, 43 Cal.3d at p. 844; *Mendez v. Superior Court* (1988) 206 Cal.App.3d 557, 574 [253 Cal.Rptr. 731] (hereafter *Mendez*).)

In *Mendez*, the plaintiff sued the County of Merced, alleging that a male deputy sheriff had forced plaintiff to perform sex acts upon him and claiming emotional distress damages. The county asserted that it should be allowed discovery to determine if the plaintiff had sexual relations with others, resulting in infidelity in her marital relationship and attendant emotional stress. The Court of Appeal concluded that the defendants had failed to demonstrate a connection between other sexual conduct and the emotional distress claimed in the pending action: "Neither defendant offers a declaration by a mental health professional that such evidence would be relevant and necessary to a determination of the cause of plaintiff's emotional distress. The specific facts in defendants' possession in no way suggest that any of plaintiff's claimed infidelities led to emotional distress or, indeed, that there was any preexisting emotional distress. The request is based solely on the speculative presumption that infidelity may lead to emotional distress; nowhere have defendants demonstrated any factual support for this presumption. It would be anomalous for a trial court to accept conjecture as a basis for discovery when there is no submitted support for the underlying assumption." (206 Cal.App.3d at pp. 570-571.)

In *Tylo v. Superior Court, supra*, 55 Cal.App.4th at page 1388 we concluded that a similar lacuna in proof precluded compelling the plaintiff to answer questions about her marital relationship in connection with a wrongful termination claim. We noted that "[d]iscovery may be compelled only upon a showing of a compelling public interest. [Citation.] In those situations where it is argued that a party waives protection by filing a lawsuit, the court must construe the concept of 'waiver' narrowly and a compelling public interest is demonstrated only where the material sought is *directly relevant* to the litigation. [Citation.] The party seeking the constitutionally

protected information has the burden of establishing that the information sought is directly relevant to the claims. [Citation.]" (*Tylo* v. *Superior Court*, *supra*, 55 Cal.App.4th at p. 1387.) We concluded that in order to prove that the material sought is directly relevant to the litigation, the defendant "must first identify the specific emotional injuries which petitioner claims resulted from termination of the contract and then demonstrate there is a nexus between damages from termination and those which may arise out of the marital relationship." (*Id.* at p. 1388.)

With these concepts in mind, we turn to the issues presented in these petitions.

*The Deposition Questions*

■ Each of the questions ordered answered relates to sexual activity of the petitioners other than incidents upon which the legal action is based. Thus, it was the burden of real parties in interest to produce specific factual evidence to demonstrate that emotional distress resulting from this other sexual activity, if any, was *directly related* to injuries claimed in this litigation.

The only factual support to demonstrate good cause is the declaration of real parties' in interest counsel, Peter L. Stacy. While the declaration does indicate that department of children and family services reports include some allegations of other possible sexual conduct, the declaration does not demonstrate that Stacy has any psychological training or qualification which would lay the foundation for him to demonstrate any nexus between other sexual conduct and the nature of the damages claimed. As in *Mendez*, there is no declaration by a mental health professional that evidence of other sexual conduct would be relevant and necessary to a determination of the cause of petitioners' emotional distress.

Stacy opines that evidence of other sexual conduct may be relevant for impeachment of petitioners. The same issue was addressed in *Mendez*, and the court concluded that to allow discovery to find information *collateral* to the issues raised in the pleading solely to impeach the plaintiff was not justified. (*Mendez, supra*, 206 Cal.App.3d at pp. 575-579.) The same result is appropriate here. Based on the showing made, real parties in interest only *hope* to discover information collateral to the issues to be addressed at trial.

■ Of course, to the extent that either petitioner may contemplate introducing into evidence prior or subsequent sexual conduct, or lack thereof, we remind them that "[petitioner] cannot be allowed to make her

very serious allegations without affording defendants an opportunity to put their truth to the test." (*Vinson* v. *Superior Court*, *supra*, 43 Cal.3d at p. 842.)

*The Independent Psychological Examination*

 In *Vinson* v. *Superior Court*, *supra*, 43 Cal.3d 833, the issue addressed was the constitutional right of privacy relating to questions of other sexual conduct during an independent psychological examination. The Supreme Court concluded: "Nowhere do defendants establish specific facts justifying inquiry into plaintiff's zone of sexual privacy or show how such discovery would be relevant. Rather they make only the most sweeping assertions regarding the need for wide latitude in the examination. Because good cause has not been shown, discovery into this area of plaintiff's life must be denied." (*Vinson* v. *Superior Court*, *supra*, 43 Cal.3d at pp. 843-844.)

The same failure is present here. As with the motion to compel answers to the deposition questions, no declaration of a mental health professional was proffered to establish the relevance of other sexual conduct, whether before the incidents alleged or after. The declaration of Stacy is even less specific in this instance and only presents unjustified conclusions about why the examination is necessary. "While a plaintiff may place his [or her] mental state in controversy by a general allegation of severe emotional distress, the opposing party may not require him [or her] to undergo psychiatric testing solely on the basis of speculation that something of interest may surface. [Citation.]" (*Vinson* v. *Superior Court*, *supra*, 43 Cal.3d at p. 840.)

## DISPOSITION

We conclude that in both motions real parties in interest failed to carry their burden of proof to establish that the information sought is directly relevant to overcome the constitutional right of privacy. Accordingly, a peremptory writ of mandate shall issue directing the trial court to vacate its orders of December 9, 1997, and April 13, 1998, each granting the relief sought, and instead issue new orders denying the relief sought. Costs are awarded to the petitioners.

Vogel (C. S.), P. J, and Epstein, J., concurred.